JOURNAL ENTRY AND OPINION
{¶ 1} Appellant Jeffrey A. Lansky appeals the trial court's granting of summary judgment in favor of appellees Leonard Rizzo, Anthony Liberatore, and the Laborers International Union of North America, Local 860. Lansky assigns the following four errors for our review:
 "I. The trial court committed reversible error by granting summary judgment on each of the appellant's defamation claims."
 "II. The trial court committed reversible error by concluding that appellant did not demonstrate with sufficient clear and convincing evidence that the defamatory statements published about the appellant were made with actual malice."
 "III. The trial court committed reversible error by granting summary judgment on each of appellant's defamation claims where genuine issues of material fact existed on each of the elements of those claims."
 "IV. The trial court committed reversible error by granting summary judgment on appellant's civil conspiracy claim."
 {¶ 2} Having reviewed the record and pertinent law, we affirm the trial court's decision. The apposite facts follow.
 Background {¶ 3} In 2003, the City of Maple Heights put out for bid the project involving the crack sealing of its roadways. The lowest bidder was Cross-Roads Asphalt Recycling, Inc. ("Cross-Roads"). Cross-Roads was a non-union company. In the past, the crack sealing had been performed by a union contractor, Specialized *Page 2 
Construction, employer of Local 860 members. Specialized Construction had also submitted a bid on the 2003 project, but its bid was approximately $27,000 higher than Cross-Roads' bid. The City Engineer, Nitin Timble, recommended to the Mayor that the contract be awarded to Cross-Roads.
 {¶ 4} Prior to Timble's recommendation, Lansky, who was City Council President and also a member of Local 860, had discussions with Ron McKinley, the owner of Cross-Roads. McKinley stated he would be willing to hire a few Local 860 members to work on the project. Lansky contacted Anthony Liberatore, who was the Business Manager and Treasurer of Local 860, to discuss the crack sealing job. Lansky informed Liberatore that because Cross-Roads was the low bidder on the project, it would probably receive the job. Lansky told Liberatore that Cross-Roads was willing to hire two union employees and meet with the union to discuss the issue. Liberatore believed that Lansky would facilitate the meeting.
 {¶ 5} In July 2003, Leonard Rizzo, who was the Field Representative of Local 860, received a telephone call from John Galic, the owner of Specialized Construction. Galic inquired whether Rizzo could aid Specialized in obtaining the sealing contract. In response, Rizzo called Mayor Incorvaia. The Mayor in turn called Lansky. Lansky told the Mayor that he would handle the matter because Local 860 was his union. According to the Mayor, Lansky also said he would set up a meeting with Cross-Roads. The Mayor advised Rizzo to call Lansky. *Page 3 
 {¶ 6} Lansky informed Rizzo that Cross-Roads was the low bidder on the project and refused Rizzo's request for him to call Specialized. Rizzo contends Lansky stated that he was arranging a meeting between Cross-Roads and the union. However, Lansky contends he never offered to facilitate the meeting. When Rizzo persisted in advocating for Specialized to be awarded the contract, Lansky said as long as he was Council President, Specialized would not receive any City contracts.
 {¶ 7} Between July 7 and 11,2003, Rizzo contacted McKinley at Cross-Roads to inquire if anyone from the City had contacted him regarding the hiring of Local 860 members for the crack sealing project. McKinley indicated no one had contacted him and that he did not know whether Cross-Roads had been awarded the contract. Based on this conversation, Rizzo informed Liberatore that Lansky had not contacted Cross-Roads as he had represented.
 {¶ 8} Liberatore thereafter left messages with Lansky regarding setting up a meeting. Liberatore contends Lansky never returned his calls; however, Lansky contends he did leave Liberatore a message while he was on vacation. There is no dispute that Lansky did not put Local 860 or Liberatore in touch with Cross-Roads to secure employment for the Local 860 members.
 {¶ 9} On July 16, 2003, City Council conducted a meeting at which the hiring of Cross-Roads was discussed. According to Mayor Incorvaia's affidavit, Lansky informed council that Local 860 did not object to the hiring of Cross-Roads as long as Cross-Roads' employees were paid the prevailing wage. Lansky contends in his *Page 4 
affidavit that he did inform City Council of McKinley's offer to hire a couple of Local 860 members and that McKinley was willing to have a meeting to discuss this. In his deposition, he contends the Mayor informed council of this.
 {¶ 10} City Council voted unanimously to award the contract to Cross-Roads. As the Council President, Lansky did not vote on the legislation because, pursuant to the City Charter, the Council President may vote only in the event of a tie. The Mayor refused to sign the legislation authorizing the contract, which pursuant to the Charter, delayed the contract for thirty days.
 Defamatory Statements at Issue {¶ 11} In August 2003, Ken Baka of the Sun Herald called Rizzo and asked if he was aware that Lansky and City Council had voted to accept Cross-Roads' bid for the sealing project. Hearing the news for the first time, Rizzo responded, "We're besides ourselves to think he'd do something like this" and that "Union brothers are supposed to stick together." On August 7, 2003, the newspaper headline stated "Union agent upset with City Council." The article quoted Rizzo's response to the contract being awarded to Cross-Roads.
 {¶ 12} On August 11, 2003, Liberatore wrote a letter addressed to City Council. Liberatore accused Lansky of deceptively undermining City Council's support of organized labor. He claimed Lansky had promised to put Local 860 "in contact with this non-union employer to work out any differences" but failed to do so. *Page 5 
Liberatore also asserted that the "depth of false remarks" by Lansky and his "efforts to deceive the rest of [City Council]" would not go "unnoticed" and that Lansky had "compromised" City Council's "integrity." He also claimed that Lansky "obviously misled" the other council members into believing Lansky was assisting Local 860, when he was not. Finally, Liberatore said Local 860 was saddened that Lansky would "endorse a non-union contractor against the same labor organization that has provided him with a standard of living he refused to support."
 {¶ 13} On October 30, 2003, a town meeting was conducted at which Maple Heights citizens could meet the mayoral candidates for the November 2003 election. Lansky was one of the candidates. Outside the restaurant where the meeting was held, protesters assembled to voice their disapproval of Lansky. A large inflatable rat was displayed and protesters called Lansky a "rat" and a "scab." Rizzo attended the protests but did not carry a sign or say anything about Lansky. Local 860 did not organize the protest or provide the rat, signs, or stickers. Lansky lost the race for mayor and claims the remarks made by Rizzo and Liberatore, and the October protest were the reasons he lost the race.
 {¶ 14} Lansky filed a complaint against Rizzo, Liberatore, and Local 860, alleging claims for defamation and conspiracy to commit defamation . Rizzo, Liberatore, and Local 860 filed a joint motion for summary judgment. The trial court originally entered summary judgment in favor of Rizzo only. However, upon *Page 6 
considering Liberatore's and Local 860's reply brief, the trial court also entered judgment in favor of Liberatore and Local 860, finding in pertinent part:
 "All claims asserted by plaintiff, with respect to the issue of actual malice, and noting that plaintiff was a public official at the time of the relevant publications, the court finds that plaintiff fails to demonstrate with convincing clarity, that defendants published the defamatory statements either with knowledge that the statements were false, or with a high degree of awareness of their probable falsity. See Varanese v. Gall (1988), 35 Ohio St.3d 78, 80. Court further notes that as plaintiff's defamation claims fail, his conspiracy claims must similarly fail."
 Standard of Review {¶ 15} We review an appeal from summary judgment under a de novo standard of review.[1] Accordingly, we afford no deference to the trial court's decision and independently review the record to determine whether summary judgment is appropriate.[2] Under Civ.R. 56, summary judgment is appropriate when: (1) no genuine issue as to any material fact exists, (2) the party moving for summary judgment is entitled to judgment as a matter of law, and (3) viewing the evidence most strongly in favor of the nonmoving party, reasonable minds can reach only one conclusion which is adverse to the nonmoving party.[3] *Page 7 
 {¶ 16} The moving party carries an initial burden of setting forth specific facts which demonstrate his or her entitlement to summary judgment.[4] If the movant fails to meet this burden, summary judgment is not appropriate; if the movant does meet this burden, summary judgment will be appropriate only if the non-movant fails to establish the existence of a genuine issue of material fact.[5]
 Actual Malice {¶ 17} In his first and second assigned errors, Lansky argues the trial court erred by finding he failed to prove with convincing clarity that Liberatore and Rizzo made their comments with actual malice. We disagree.
 {¶ 18} It is undisputed that Lansky, as City Council President and a mayoral candidate, was a public official. A public official may not recover damages for defamation relating to his or her official conduct unless the public official proves that the alleged defamatory statement was made with actual malice.[6] Therefore, even if we assume the comments made by Rizzo and Liberatore were defamatory, Lansky must establish the defamatory statements were made with actual malice.
 {¶ 19} Public officials or public figures must demonstrate "actual malice" with convincing clarity to remove the defamatory speech from constitutional protection *Page 8 
and establish a defamation claim.[7] To show "actual malice," the plaintiff must prove that the statement was made "with knowledge that it was false, or with reckless disregard of whether it was false or not."[8] To establish reckless disregard, the plaintiff must present clear and convincing evidence that the false statements were made with a "high degree of awareness of their probable falsity,"[9] or that "the defendant in fact entertained serious doubts as to the truth of his publication."[10] Whether the evidence is sufficient to support a finding of actual malice is a question of law for the court to decide.[11]
 Rizzo's Statement {¶ 20} Rizzo's statement that "we're beside ourselves to think he'd do something like this" was made directly after a reporter from the Sun Herald told him that City Council and Lansky had approved the hiring of a non-union contractor. Lansky contends that he did not vote in favor of the contract because as City Council President he was not permitted to vote unless there was a tie. Therefore, he contends he did not "do" what Rizzo alleged he did. "It is not sufficient for a libel *Page 9 
plaintiff to show that an interpretation of facts is false; rather he must prove with convincing clarity that defendant was aware of the high probability of falsity."[12] Because Baka regularly reports on City Council meetings, it was not unreasonable for Rizzo to rely on his statement that Lansky had voted in favor of hiring Cross-Roads.
 {¶ 21} Moreover, Rizzo had contacted McKinley regarding Lansky's representation that Cross-Roads had agreed to hire a few Local 860 members and was told by McKinley that no one from City Hall had contacted him. This led Rizzo to believe that Lansky was not being honest about his dealings with Cross-Roads. This discovery, along with the reporter's allegation that Lansky had supported the vote in favor of Cross-Roads, was the basis of Rizzo's comment. Based on these surrounding facts, we cannot conclude that Rizzo acted with actual malice in making his statements to the Sun Herald.
 Liberatore's Letter {¶ 22} We also conclude that Lansky failed to provide evidence that Liberatore made the statements in his letter to City Council with knowledge that they were false or with reckless disregard as to their truth or falsity. Lansky claims he presented sufficient evidence that Liberatore acted with malice because (1) Liberatore knew his assertions were false; (2) he knew that Lansky did not mislead or confuse anyone, *Page 10 
and (3) he made the statements without first verifying them by contacting Cross-Roads or Lansky.
 {¶ 23} Our review of the record indicates Lansky has failed to show Liberatore was aware his statements were false. Lansky merely states Liberatore knew his accusations were false "because they were not true."[13] However, in his deposition and affidavit, Liberatore contends his statements regarding Lansky's deception were based on facts. He further testified that he did not have any information in his possession which made him doubt the validity of his allegations.
 {¶ 24} Additionally, nothing existed in the record that Liberatore denied writing the letter or that he had contrary information or knowledge regarding the situation. Instead, Liberatore relied on a conversation he had with Rizzo in accusing Lansky of deceiving and misleading council. Rizzo informed him that a reliable source had told him that Lansky had misrepresented to members of City Council that Local 860 did not object to the hiring of Cross-Roads and that he was working out an arrangement with Cross-Roads to hire Local 860 members. Actual malice is not established when the declarant relies solely on a third party intimately involved in the matter for his information.[14] Rizzo was intimately involved in the discussions regarding the Cross-Roads contract and had a close relationship with the Mayor, who attended the *Page 11 
council meeting. In fact, the Mayor's affidavit indicates that Lansky "advised City Council and me that Local 860 was fine with Cross-Roads doing the project as long as the employees of Cross-Roads were paid [the] prevailing wage."[15] Liberatore had no reason to believe that Rizzo's statements were untruthful or inaccurate.
 {¶ 25} We also do not conclude Liberatore's comments regarding Lansky's failure to facilitate a meeting between the union and Cross-Roads were made with a high degree of knowledge of their falsity. A proper inquiry in determining actual malice requires the court to consider the subjective state of the declarant's mind.[16] It was completely plausible for Liberatore to have misinterpreted Lansky's intentions when he advised him that Cross-Roads was willing to meet with Local 860 to discuss the hiring of union members. Liberatore could have understood this to mean Lansky would facilitate the meeting. "[I]t is not sufficient for a libel plaintiff to show that an interpretation of facts is false; rather, he must prove with convincing clarity that defendant was aware of the high probability of falsity."[17]
 {¶ 26} Moreover, when Rizzo told Liberatore that he had called McKinley at Cross-Roads and discovered Lansky had not contacted Cross-Roads regarding the hiring of union members, this supported Liberatore's belief that Lansky had not *Page 12 
discussed the hiring of union members with Cross-Roads. Accordingly, when a statement is supported by some basis in fact, courts have found insufficient evidence of actual malice even if the statement is ultimately found to be untrue.[18]
 {¶ 27} Liberatore's statement accusing Lansky of endorsing a non-union contractor was also not made with actual malice. When he wrote the letter, Liberatore was aware of the article in the Sun Herald, which referenced Lansky's "winning support" for Cross-Roads. This, in conjunction with Rizzo's information that Lansky failed to contact Cross-Roads and "endorsed" Cross-Roads at the council meeting, led him to believe that Lansky was in support of Cross-Roads receiving the contract.
 {¶ 28} Accordingly, Lansky has not demonstrated with convincing clarity that Rizzo and Liberatore made their statements with actual malice. Accordingly, the trial court did not err by granting summary judgment in favor of Rizzo and Liberatore. Appellant's first and second assigned errors are overruled.
 Conspiracy Claim {¶ 29} In his fourth assigned error, Lansky contends the trial court erred in entering summary judgment on his conspiracy claim. We disagree. *Page 13 
 {¶ 30} Lansky contends that Rizzo and Liberatore separately defamed him, and then by acting in concert with Local 860, further defamed him by inducing others to allege clearly false and defamatory facts to the public at the town meeting at the restaurant. Lansky claims the parties conspired to defame him to ensure he would lose the mayoral election.
 {¶ 31} In order to establish a conspiracy claim, a plaintiff must prove: (1) a malicious combination, (2) involving two or more persons, (3) injury to person or property, and (4) the existence of an unlawful act independent from actual conspiracy.[19] In addition, a "conspiracy [claim] cannot be made the subject of a civil action unless something is done which, in the absence of the conspiracy allegation, would give rise to a cause of action."[20]
 {¶ 32} Although Lansky claims Liberatore defamed him at the protest outside the town meeting, Liberatore was neither present, nor did he authorize the inflatable rat or anti-Lansky signs and stickers.
 {¶ 33} Although Rizzo was present at the protest, he did not carry a sign or make any statements. Rizzo also did not bring the inflatable rat or anti-Lansky signs or decals. Although Lansky contends a police officer informed him that Rizzo had made remarks about him, Lansky could not recall the officer's name. Additionally, *Page 14 
Local 860 did not organize the protest and did not provide the inflatable rat, signs, or decals.
 {¶ 34} Lansky's conspiracy claim must also fail because he failed to prove actual damages as a result of the conspiracy. Although he contends Liberatore's and Rizzo's statements, and the protest rally were the reasons he lost the election, the evidence does not support this allegation. Before any of the alleged defamatory remarks were made, all of the local unions had endorsed Lansky's opponent. The local newspapers, Congresswoman Tubbs Jones, Commissioner Dimora, and Mayor Incorvaia had also endorsed his opponent. Without evidence he lost endorsements as a result of the defamatory acts, and without a survey indicating the basis of the voters' decision to vote for his opponent, Lansky cannot prove he suffered damages.
 {¶ 35} Given our disposition of the first and second assigned errors, Lansky's third assigned error, which addresses the defamatory nature of the statements, is moot and need not be addressed.[21]
Judgment affirmed.
It is ordered that appellees recover from appellant their costs herein taxed.
 The court finds there were reasonable grounds for this appeal. *Page 15 
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
FRANK D. CELEBREZZE, JR., A.J., and COLLEEN CONWAY COONEY, J., CONCUR.
[1] Baiko v. Mays (2000), 140 Ohio App.3d 1, citing Smiddy v. TheWedding Party, Inc. (1987), 30 Ohio St.3d 35; Northeast Ohio Apt. Assn.v. Cuyahoga Cty. Bd. of Commrs. (1997), 121 Ohio App.3d 188.
[2] Id. at 192, citing Brown v. Scioto Bd. of Commrs. (1993),87 Ohio App.3d 704.
[3] Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317, 327.
[4] Dresher v. Burt, 75 Ohio St.3d 280, 292-293, 1996-Ohio-107.
[5] Id. at 293.
[6] New York Times v. Sullivan (1964), 376 U.S. 254, 283; Gertz v.Robert Welch Inc. (1974), 418 U.S. 323, 324; Dupler v. MansfieldJournal (1980), 64 Ohio St.2d 116.
[7] New York Times Co., supra at 279-280; Dupler, supra at paragraph two of the syllabus.
[8] New York Times, supra at 280.
[9] Garrison v. Louisiana (1964), 379 U.S. 64, 74.
[10] St. Amant v. Thompson (1968), 390 U.S. 727, 731.
[11] Harte-Hanks Communications, Inc. v. Connaughton (1989),491 U.S. 657; Bose Corp. v. Consumers Union of U.S. Inc. (1984),466 U.S. 485.
[12] Jacobs v. Frank (1991), 60 Ohio St.3d 111, 118-119.
[13] Lansky Depo. at 105.
[14] Dale v. Am. Fedn. of State, Cty. and Mun. Emp. Intern,AFL-CIO (1991), 57 Ohio St.3d 112, 118.
[15] Mayor Incorvaia's affidavit, paragraph 8.
[16] St. Amant v. Thompson, supra.
[17] Jacobs v. Frank, supra at 119.
[18] New York Times, supra; St. Amant, supra; SEIU v. Ohio ElectionsCommission, 158 Ohio App.3d 769, 2004-Ohio-5662; Ohio ElectionsCommission, 156 Ohio App.3d 134. 2004-Ohio-582; Mosley v. Evans (1993),90 Ohio App.3d 633, 638.
[19] Universal Coach v. New York City (1993), 90 Ohio App.3d 284,292.
[20] Katz v. Banning (1992), 84 Ohio App.3d 543, 552.
[21] App.R. 12(A)(1)(c). *Page 1