JOURNAL ENTRY AND OPINION
{¶ 1} Appellant, Jeffrey Lansky, appeals the trial court's grant of summary judgment in favor of appellee, Michael Ciaravino. After a thorough review of the record, and for the reasons set forth below, we affirm.
 {¶ 2} This appeal arises out of a contested mayoral election between Lansky and Ciaravino. On October 20, 2004, after losing the election, Lansky filed a defamation suit against Ciaravino for alleged defamatory statements included in a campaign brochure. On September 8, 2005, Lansky dismissed the case without prejudice.
 {¶ 3} On September 13, 2005, Lansky refiled his complaint, and on September 21, 2005, he issued interrogatories and a request for production of documents. On October 10, 2005, Ciaravino filed his answer, a motion to stay discovery, and a motion for summary judgment. On October 17, 2005, Lansky filed his memo in opposition to the motion to stay discovery. On November 9, 2005, Lansky sought an extension to respond to the motion for summary judgment. On November 10, 2005, Lansky issued subpoenas for records on various non-parties. Ciaravino filed a motion to quash the subpoenas.
 {¶ 4} On November 30, 2005, the trial court denied Ciaravino's motion to stay discovery, granted Lansky's motion for an extension to respond to the motion for summary judgment, and denied Ciaravino's motion to quash the subpoenas. The trial court gave the non-parties until December 30, 2005 to respond to the *Page 2 
subpoenas. A discovery cutoff was set for January 31, 2006, and the trial court gave
Lansky until February 10, 2006 to respond to the motion for summary judgment.
 {¶ 5} Ultimately, no one responded to the subpoenas. On January 11, 2006, Ciaravino responded to the document requests and answered the interrogatories. On January 31, 2006, Lansky asked the trial court to extend his time for discovery and time to respond to the summary judgment motion.
 {¶ 6} On February 24, 2006, Lansky filed an opposition to the summary judgment motion, which included his own affidavit in support. On September 14, 2006, the court granted Lansky's motion to enlarge discovery and set a new discovery cutoff date of October 16, 2006. On October 16, 2006, Lansky filed another motion for an enlargement of time to complete discovery. On December 17, 2006, the court reopened discovery until January 19, 2007. Finally, on May 30, 2007, the trial court granted summary judgment in favor of Ciaravino, finding that Lansky presented no evidence of malice. *Page 3 
 {¶ 7} The facts that lead to this appeal began in 2003, when both Lansky and Ciaravino ran for mayor in the city of Maple Heights, Ohio ("the city"). Ultimately, Ciaravino won the election. As part of his campaign, Ciaravino circulated a brochure that listed his qualifications, the organizations that endorsed him, and information about Lansky.
 {¶ 8} Lansky alleges that parts of the brochure were defamatory, including information alleging that Lansky exhibited favoritism, frequently traveled at the city's expense while president of city council, and had a pattern of intimidation against political opponents.
 {¶ 9} On the front of the brochure, superimposed over a grayed-out picture of Lansky, was written, "unethical conduct, conflict of interest, political intimidation, favoritism, [and] `Jeff Lansky needs your vote. But are these the traits you want in your next Mayor?'"
 {¶ 10} Inside the brochure, under the heading, "Does Jeff Lansky have the integrity or temperament to be mayor?" was a picture of a cement truck with the city's logo and the words, "Lansky's Money Making Machine" printed on the truck.
 {¶ 11} Favoritism
 {¶ 12} Under the heading, "Follow the Lansky money trail," the brochure stated that Lansky worked for Schloss Paving Company ("Schloss"), which did business with the city and had received "hundreds of thousands of taxpayer dollars." The brochure explained that Lansky left Schloss to work for Trinidad Paving *Page 4 
Company ("Trinidad"), which began receiving contracts from the city, while Schloss received none. Finally, according to the brochure, Lansky later returned to work for Schloss, and Schloss again began receiving contracts from the city. Next to this text, there is a copy of an excerpt from a Cleveland Plain Dealer article titled, "Council president misused influence, company charges."
 {¶ 13} Under the heading, "Favoritism and preferential treatment," the brochure stated that Lansky "takes good care of his employer, Schloss Paving Company. He has instructed the City Finance Department to issue payment checks to Schloss Paving Company out of sequence and ahead of the payment schedule. It pays to know Jeff Lansky!" Next to this text, there is a depiction of a check made payable to "Jeff Lansky's employer" for "Thousands of City Dollars." The check's memo area states that the check is in payment of "favoritism," and the check is signed, "city taxpayers."
 {¶ 14} Travel at City's Expense {¶ 15} Next to the heading, "Frequent flying in Lansky style," the brochure stated that Lansky has "spent thousands of City taxpayer dollars flying to Orlando, Florida; Phoenix, Arizona; Atlanta, Georgia; Norfolk, Virginia; Chicago, Illinois; Philadelphia, Pennsylvania; Minneapolis, Minnesota; Salt Lake City, Utah; and Boston, Massachusetts."
 {¶ 16} Pattern of Intimidation *Page 5 
 {¶ 17} Under the heading, "A pattern of intimidation," the brochure stated that Lansky "launches divisive attacks and insults to get his way. He has leveled charges against Mayor Santo Incovaia [sic], County Commissioner Jimmy Dimora, former State Representative Leroy Peterson, union leaders, and our Service Director." Next to this text, there is a copy of a Plain Dealer article titled, "Maple Hts. Official Sues Councilman," which involved a lawsuit against the city's service director, Frank Novak, Jr.
 {¶ 18} Review and Analysis
 {¶ 19} Lansky brings this appeal and asserts one assignment of error for our review.
 {¶ 20} "I. The trial court erred in granting appellee, Michael Ciaravino's motion for summary judgment."
 {¶ 21} Lansky argues that genuine issues of material fact remain regarding the element of malice; therefore, the trial court erred when it granted Ciaravino's motion for summary judgment.
 {¶ 22} "Civ. R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse *Page 6 
to that party." Temple v. Wean United, Inc. (1977), 50 Ohio St.2d 317,327, 364 N.E.2d 267.
 {¶ 23} It is well established that the party seeking summary judgment bears the burden of demonstrating that no issues of material fact exist for trial. Celotex Corp. v. Catrett (1986), 477 U.S. 317, 330,106 S.Ct. 2548, 91 L.Ed. 2d 265; Mitseff v. Wheeler (1988), 38 Ohio St.3d 112,115, 526 N.E.2d 798. Doubts must be resolved in favor of the nonmoving party. Murphy v. Reynoldsburg, 65 Ohio St.3d 356, 1992-Ohio-95,604 N.E.2d 138.
 {¶ 24} In Dresher v. Burt, 75 Ohio St.3d 280, 1996-Ohio-107,662 N.E.2d 264, the Ohio Supreme Court modified and/or clarified the summary judgment standard as applied in Wing v. Anchor Media, Ltd. of Texas
(1991), 59 Ohio St.3d 108, 570 N.E.2d 1095. Under Dresher, "the moving party bears the initial responsibility of informing the trial court of the basis for the motion, and identifying those portions of the recordwhich demonstrate the absence of a genuine issue of fact or materialelement of the nonmoving party's claim." (Emphasis in original.) Id. at 296. The nonmoving party has a reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293. The nonmoving party must set forth specific facts by the means listed in Civ. R. 56(C) showing a genuine issue for trial exists. Id.
 {¶ 25} This court reviews the lower court's granting of summary judgment de novo. Brown v. Scioto County Commrs. (1993),87 Ohio App.3d 704, *Page 7 622 N.E.2d 1153. An appellate court reviewing the grant of summary judgment must follow the standards set forth in Civ. R. 56(C). "The reviewing court evaluates the record * * * in a light most favorable to the nonmoving party * * *. [T]he motion must be overruled if reasonable minds could find for the party opposing the motion." Saunders v. McFaul (1990),71 Ohio App.3d 46, 50, 593 N.E.2d 24; Link v. Leadworks Corp. (1992),79 Ohio App.3d 735, 741, 607 N.E.2d 1140.
 {¶ 26} In order to prevail on a defamation action, a plaintiff must show that the defendant made a false and defamatory statement about him; that the false statement was published; that the plaintiff suffered injury; and that the defendant acted with the required degree of fault.Stohlmann v. WJW TV, Inc., Cuyahoga App. No. 86491, 2006-Ohio-6408, at ¶ 8.
 {¶ 27} It is well-settled that a public official must prove that allegedly defamatory statements were made with actual malice. New YorkTimes Co. v. Sullivan (1964), 376 U.S. 254, 283, 84 S.Ct. 710,11 L.Ed.2d 686; Dupler v. Mansfield Journal Co. (1980), 64 Ohio St.2d 116,118-119, 413 N.E.2d 1187. Thus, even if the brochure was defamatory, Lansky must establish that the comments were made with actualmalice.
 {¶ 28} We find, and Lansky admits, that, as city council president and a mayoral candidate, he was a public official. See Dupler, supra. Therefore, in order to overcome Ciaravino's motion for summary judgment, Lansky needed to provide evidence that Ciaravino acted with malice in publishing the brochure. *Page 8 
 {¶ 29} The trial court found that "Lansky failed to adduce any evidence demonstrating that Ciaravino harbored actual malice at the time he published the brochure. Furthermore, there is evidence in the record from which the court can conclude that Ciaravino believed statements to be truthful at the time they were published." We agree with the trial court. Because Lansky failed to adduce any evidence that Ciaravino acted with actual malice, we find that the trial court correctly granted Ciaravino's motion for summary judgment.
 {¶ 30} "To show `actual malice,' the plaintiff must prove that the statement was made `with knowledge that it was false, or with reckless disregard of whether it was false or not.'" Lansky v. Rizzo, Cuyahoga App. No. 88356, 2007-Ohio-2500, at ¶ 19, citing New York Times Co., supra at 280. To establish reckless disregard, the plaintiff must present clear and convincing evidence that the false statements were made with a high degree of awareness of their falsity or that the defendant in fact entertained serious doubts as to the truth of his publication. Garrison v. Louisiana (1964), 379 U.S. 64, 74,85 S.Ct. 209, 13 L.Ed.2d 125. Evidence of negligence in failing to investigate the facts is insufficient to establish actual malice. New York TimesCo., supra, at 287.
 {¶ 31} The standard of "clear and convincing evidence" is defined as "that measure or degree of proof which will produce in the mind of the trier of facts a firm belief or conviction as to the allegations sought to be established. It is intermediate, being more than a mere preponderance, but not to the extent of such certainty as is *Page 9 
required beyond a reasonable doubt as in criminal cases. It does not mean clear and unequivocal." Cross v. Ledford (1954), 161 Ohio St. 469,477, 120 N.E.2d 118.
 {¶ 32} In his complaint, Lansky alleged there are three separate defamatory sections in Ciaravino's brochure. These sections include statements that Lansky exhibited favoritism, traveled at the city's expense, and engaged in a pattern of intimidation against political opponents. Addressing each section in turn shows that Lansky failed to produce evidence that Ciaravino exhibited actual malice in printing the brochure.
 {¶ 33} Favoritism
 {¶ 34} Lansky argues that there are genuine issues of material fact regarding whether Ciaravino exhibited actual malice when he published statements suggesting that Lansky's employment at various paving companies resulted in those companies receiving contracts from the city. We find that Ciaravino provided sufficient evidence that the statements he made were true, which shows he could not have had actual malice when publishing them.
 {¶ 35} Other than his own self-serving affidavit, Lansky has provided no evidence to demonstrate a genuine issue of material fact. He submitted no other documents or affidavits from other parties. This court has held that, "a party's unsupported and self-serving assertions offered to demonstrate issues of fact, standing alone and without corroborating materials contemplated by Civ. R. 56, are simply insufficient to overcome a properly supported motion for summary judgment." *Page 10 Shreves v. Meridia Health Sys., Cuyahoga App. No. 87611, 2006-Ohio-5724, at ¶ 27.
 {¶ 36} In his affidavit, Lansky simply argues that the allegations are not true. "A proper inquiry in determining actual malice requires the court to consider the subjective state of the declarant's mind."Lansky, supra at ¶ 25. "It is not sufficient for a libel plaintiff to show that an interpretation of facts is false; rather, he must prove with convincing clarity that defendant was aware of the high probability of falsity." Id., citing Jacobs v. Frank (1991), 60 Ohio St.3d 111, 119,573 N.E.2d 609.
 {¶ 37} Based upon the evidence in the record, the following facts exist: According to his own deposition, Lansky was a member of the Maple Heights city council from 1987 through 2003. He worked for Schloss from 1980 through 1990; for Trinidad from 1992 through 1994; and again for Schloss from 1999 to the present. Lansky admitted that, while he was council president and worked at Schloss, Schloss received "hundreds of thousands of taxpayer dollars." The city's director of finance, Keith Schuster, stated in his affidavit that the city entered into several contracts for road maintenance while Lansky worked on the city council. According to Schuster, the city awarded contracts to Schloss and Trinidad from 1991 through 2003. At his deposition, Lansky admitted that, after he began working for Trinidad, Trinidad began receiving city contracts, and Schloss received no contracts.
 {¶ 38} According to Kenneth Tyrpak, interim city engineer, while Lansky worked for Trinidad in 1992, he requested that the bid specifications for street *Page 11 
projects should require that asphalt be manufactured in a mix drum, which is how Trinidad made its asphalt. Despite the fact that Schloss (Lansky's then former employer) was the low bidder, its bid was rejected because it did not use a mix drum. Finally, Tyrpak stated in his affidavit that Schloss received no contracts until Lansky again began working for them.
 {¶ 39} A review of the above facts shows that Ciaravino's statements about the city contracts and Lansky's employment are correct, which evidences that Ciaravino could not have had actual malice in publishing them. Lansky provided no other evidence to sustain his burden that issues of material fact remain regarding whether Ciaravino acted with actual malice.
 {¶ 40} Finally, we address the brochure's assertion that Lansky instructed the city's finance department to issue payment checks to Schloss out of sequence and ahead of the payment schedule. We find that Ciaravino provided evidence that he did not act with malice because he believed these statements to be true. Again, Lansky has not presented any evidence that Ciaravino acted with malice, other than his own affidavit in which he asserts that he gave no such instruction to the finance department. Schuster stated in his affidavit that the city pays vendors twice a month, but Lansky directed him to pay Schloss ahead of schedule. The city's purchasing coordinator, Judi Cooper, also provided an affidavit, in which she stated that Schuster had directed her to pay the Schloss invoices ahead of schedule. Because *Page 12 
Ciaravino has presented evidence that he did not act with malice, and Lansky failed to provide evidence refuting this fact, summary judgment was appropriate.
 {¶ 41} Travel at City's Expense
 {¶ 42} Lansky argues that there are genuine issues of material fact regarding whether Ciaravino exhibited actual malice when he published statements that Lansky often traveled out of state at the city's expense. However, in his deposition, Lansky admitted that he had traveled to those destinations at the city's expense. Because the statements are true, Ciaravino could not have published them with knowledge of their falsity; therefore, there is no evidence that he exhibited actual malice.
 {¶ 43} Pattern of Intimidation
 {¶ 44} Lansky argues that there are genuine issues of material fact regarding whether Ciaravino exhibited actual malice when he published statements that Lansky had brought lawsuits against various public officials. A review of Lansky's deposition indicates that he has, in fact, sued a number of political figures.
 {¶ 45} Lansky admitted that he had sued Representative Peterson and the city's former service director; that he "may have" sued Mayor Incorvaia; and that he had also sued Edward Licht, Daniel Birel, and Louis Russo. Clearly, the evidence suggests a pattern of intimidation. Because the facts demonstrate that the statements in the brochure are true, Ciaravino could not have published them with *Page 13 
knowledge of their falsity; therefore, there is no evidence that he exhibited actual malice.
 {¶ 46} To summarize, Ciaravino presented evidence via affidavits and his own deposition that he did not act with actual malice when printing the brochure. Other than his own self-serving affidavit in which he alleged that various facts were not true, Lansky offered no evidence to refute Ciaravino's evidence. Therefore, there are no genuine issues of material fact remaining, and we find that the trial court properly granted summary judgment in favor of Ciaravino. Accordingly, Lansky's assignment of error is overruled.
Judgment affirmed.
It is ordered that appellee recover from appellant costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate be sent to said court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 COLLEEN CONWAY COONEY, P.J., and KENNETH A. ROCCO, J., CONCUR *Page 1