[Cite as *Guy v. Axe*, 2010-Ohio-986.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## UNION COUNTY


**SHAD GUY**
**DBA GUY DRYWALL,**

**PLAINTIFF-APPELLEE,**                    **CASE NO.  14-09-31**

**v.**

**BOB AXE,**

                                              **O P I N I O N**

**DEFENDANT-APPELLEE,**

**[VINCENT DePASCALE - APPELLANT].**


**Appeal from Marysville Municipal Court**
**Trial Court No. 07 CVF 01122**

**Judgment Affirmed**

**Date of Decision:   March 15, 2010**


**APPEARANCES:**

  *Vincent DePascale,* **Appellant**

  *Gregory D. Wilson*  **for Appellee**

Case No. 14-09-31

**PRESTON, J.**

{¶1} Plaintiff's attorney-appellant, Vincent DePascale (hereinafter "DePascale"), appeals the judgment of the Marysville Municipal Court, Union County, which granted defendant-appellee's motion for sanctions and damages under R.C. 2323.51. For the reasons that follow, we affirm.

{¶2} This appeal stems from an underlying case involving DePascale's client, plaintiff Shad Guy (hereinafter "Guy"), against defendant-appellee, Bob Axe (hereinafter "Axe"). The general facts of the case are not in dispute. Sometime between late 2006 and early 2007, Axe hired Guy to paint and drywall his house. On August 26, 2007, Guy presented Axe with his "final bill" for some "extras" that Guy had performed. Axe refused to pay Guy, and as a result, Guy, through his attorney DePascale, filed a complaint against Axe on October 24, 2007. (Compl., Doc. No. 1). DePascale amended the complaint on December 10, 2007, and ultimately alleged five causes of action against Axe, which included two claims based on the contract, and three claims based on fraud. (Amended Compl., Doc. No. 9). Axe filed an answer admitting that he owed Guy for some of the work, but disputed the full amount alleged by Guy. In addition, Axe filed a counterclaim against Guy alleging that Guy had breached their contracts by failing to perform his services in a workmanlike manner, which had caused Axe damages.

{¶3} Eventually, a bench trial on both claims was held on February 11, 2009; however, before commencing the trial, DePascale moved for a continuance, which was denied. As a result of the denial of his motion for a continuance, DePascale voluntarily dismissed the complaint under Civ.R. 41. Despite the dismissal of Guy's complaint against Axe, Axe's counterclaim still proceeded to trial, and the trial court subsequently found for Axe and awarded him damages in the amount needed to repair the work performed by Guy.

{¶4} Subsequently, on March 17, 2009, Axe filed a motion against both DePascale and Guy for sanctions pursuant to R.C. 2323.51 and Civ.R. 11.

{¶5} A hearing on Axe's motion for sanctions against both Guy and DePascale was held on April 22, 2009. Guy failed to appear, but evidence was still presented to the trial court, and DePascale testified on his own behalf. On August 12, 2009, the trial court found that DePascale and Guy's conduct had violated R.C. 2323.51, and it granted judgment against DePascale in the amount of $7,375.00.

{¶6} DePascale now appeals and raises the following three assignments of error. For ease of our discussion, we elect to address DePascale's assignments of error together.

**ASSIGNMENT OF ERROR NO. I**

**THE TRIAL COURT ERRED IN FINDING THAT COUNSEL WAS GUILTY OF FRIVOLOUS CONDUCT**

**BECAUSE THE ALLEGATION OF FRAUD WAS REQUIRED TO BE FULLY INVESTIGATED PRIOR TO THE FILING OF THE LAWSUIT WHEN WITNESSES DID EXIST WHO WOULD SO TESTIFY, BECAUSE COUNSEL REFUSED TO ACCEPT FACSIMILE TRANSMISSIONS, AND BECAUSE THE JUDGE IMPUTED ATTITUDES AND ACTIONS TO COUNSEL THAT WERE UNFOUNDED.**

**ASSIGNMENT OF ERROR NO. II**

**THE COURT ERRED BY ASSESSING SANCTIONS FOR LEGAL FEES WHEN THE DEFENDANT PAID NO FEES, NO FEE AGREEMENT WAS EVER MADE, NO STANDARD FOR THE FEES WAS PROVEN, DEFENDANT WAS NEVER TOLD THAT HE DEFINITELY WOULD BE CHARGED FOR THE SERVICES PERFORMED, AND THE ATTORNEY FOR DEFENDANT COULD NOT SPECIFY WHAT ADDITIONAL WORK WAS REQUIRED BY THE CLAIMED FRIVOLOUS CONDUCT OF THE ATTORNEY AGAINST WHOM THE SANCTIONS WERE AWARDED.**

**ASSIGNMENT OF ERROR NO. III**

**THE COURT ERRED IN FINDING THAT FEES IN EXCESS OF $14,000.00 WERE REASONABLE IN A CASE INVOLVING A CLAIM OF LESS THAN $5,000.00 AND GRANTING SANCTIONS TO THE EXTENT OF THE ENTIRE FEE STATEMENT RATHER THAN JUST THOSE FEES WHICH WERE ATTRIBUTABLE TO THE CLAIMED FRIVOLOUS CONDUCT.**

**{¶7}** Essentially, DePascale claims that the trial court erred in finding that his conduct was "frivolous" under R.C. 2323.51, and that it should not have sanctioned him.

**{¶8}** A trial court's decision with respect to an award of attorneys fees pursuant to Civ.R. 11 or R.C. 2323.51 is reviewed under an abuse of discretion

-4-

standard. *State ex rel. Fant v. Sykes* (1987), 29 Ohio St.3d 65, 505 N.E.2d 966; *Turowski v. Johnson* (1991), 70 Ohio App.3d 118, 121, 590 N.E.2d 434; *Gordon Food Service, Inc. v. Hot Dog John's, Inc.* (1991), 76 Ohio App.3d 105, 112, 601 N.E.2d 131. An abuse of discretion implies that the trial court's decision was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219, 450 N.E.2d 1140. If the trial court's factual findings supporting a conclusion that a party engaged in frivolous conduct is supported by competent, credible evidence, the findings will not be overturned. *Wrinch v. Miller*, 9th Dist. No. 24136, 2009-Ohio-3862, ¶49, quoting *Jefferson v. Creveling*, 9th Dist. No. 24206, 2009-Ohio-1214, ¶12, quoting *S & S Computer Sys., Inc. v. Peng*, 9th Dist. No. 20889, 2002-Ohio-2905, ¶9.

**{¶9}** First of all, we note that sanctions given under Civ.R. 11 and R.C. 2323.51 are different. Civ.R. 11 states that an attorney must sign all documents filed with the court, specifically that "to the best of the attorney's * * * knowledge, information, and belief there is good ground to support it; and it is not interposed for delay." If an attorney is found to have *willfully* violated Civ.R. 11, the trial court may sanction the attorney by awarding the opposing party its expenses and attorney's fees incurred. See *Callahan v. Akron Gen. Med. Ctr.*, 9th Dist. Nos. 24434, 24436, 2009-Ohio-5148, ¶¶23-24, citing Civ.R. 11 (emphasis added).

{¶10} However, R.C. 2323.51 allows a trial court to award attorney's fees to a party who has been adversely affected by frivolous conduct in connection with a civil action. Any party who has commenced or persisted in maintaining a frivolous action may be assessed sanctions. *Callahan*, 2009-Ohio-5148, at ¶¶31-32, citing *Sigmon v. Southwest Gen. Health Ctr.*, 8th Dist. No. 88276, 2007-Ohio-2117, ¶33. See, also, *Kozar v. Bio-Medical Applications of Ohio, Inc.*, 9th Dist. No. 21949, 2004-Ohio-4963, ¶20.

{¶11} Here, while the trial court stated that its award was pursuant to Civ.R. 11, the trial court's reasoning for its award was based solely on R.C. 2323.51 and DePascale's allegedly frivolous conduct. Therefore, we will analyze the trial court's decision as it relates to R.C. 2323.51 and whether DePascale's conduct was frivolous.

{¶12} Again, R.C. 2323.51 provides that "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action." R.C. 2323.51(B)(1). The statute defines "conduct" as "the filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action." R.C.

2323.51(A)(1)(a). Moreover, "frivolous conduct" is defined as being one of the following:

> **(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.**
>
> **(ii) It is not warranted under existing law , cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.**
>
> **(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.**
>
> **(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.**

R.C. 2323.51(A)(2)(a)(i), (ii), (iii), (iv). Overall, a trial court must determine whether the conduct was "frivolous" as defined under the statute and that the opposing party was adversely affected, and if it finds those things, then the trial court may determine what amount of fees, costs, and expenses were brought about by the frivolous conduct. R.C. 2323.51(B)(2)(a).

{¶13} In this particular case, the trial court found that "the attorney for Plaintiff engaged in a strategy of deliberate delay, made himself unavailable and his contentious conduct without a doubt adversely affected Defendant Axe," and that the record was "replete with frivolous conduct" by DePascale. (Aug. 12, 2009

JE). A few examples of this frivolous conduct cited by the trial court included: not opening mail; commenting that his secretary was "a 40 watt bulb"; taking the position that because the telefax machine belonged to someone else at his office, DePascale did not have to respond to faxes via that machine; and repeatedly using a variety of illnesses as excuses for being away from his office. (Aug. 12, 2009 JE). Despite even the above mentioned, the trial court additionally found:

> **However, the foregoing pale beside the allegations that Defendant intended to defraud the Plaintiff (paragraph 10 of the Amended Complaint and trial statement) waited until a year and two days after the Complaint was filed to tell opposing counsel that documents did not exist as originally claimed (Plaintiff's Motion to Strike of 12/17/2008), alleged that the Defendant was stealing from Plaintiff (12/21/2007 Motion to Strike Counterclaim), and finally failed to inform himself, or the Court, that Plaintiff filed bankruptcy. Plaintiff's complaint was amended once. There was ample opportunity to seek to amend again when counsel should have known fraud and theft were not issues. Add this to the fact that, as to the Plaintiff, Plaintiff's bankruptcy made this case a meaningless exercise after filing it on October 31, 2008.**

(Aug. 12, 2009 JE). As a result, the trial court found that "Plaintiff's counsel's conduct was frivolous, that it caused Defendant Axe unnecessary expense, had an adverse affect on Axe, caused unnecessary services to be rendered by Attorney Wilson, and, based upon the egregiousness of Plaintiff's counsel's conduct, Attorney Vincent De Pasquale [sic] should be sanctioned." (Aug. 12, 2009 JE).

{¶14} After reviewing the record, we cannot say that the trial court abused its discretion in finding that DePascale's conduct was frivolous. The record

clearly supports the trial court's findings that DePascale's conduct rose to the level of "frivolous" as defined under R.C. 2323.51(A)(2)(a). The evidence shows that DePascale unnecessarily delayed the discovery proceedings. DePascale filed his amended complaint on December 10, 2007, and the deadline for discovery was set for May 1, 2008; nevertheless, the deposition of Guy was not conducted until November 10, 2008, and in fact was never completed because of the actions of DePascale and Guy. The record shows that Axe's attorney, Eric J. Wilson (hereinafter "Wilson"), made several attempts to contact DePascale via telephone, and when he failed to get any responses from DePascale, Wilson began sending notes and letters to DePascale about obtaining discovery documents and setting up the depositions. (Apr. 22, 2009 Tr. at 23-26); (Defendant's Exs. 8, 9, 10, 11).

{¶15} Eventually, when Guy's deposition was conducted on November 10, 2008, DePascale and Guy continued to delay the proceedings by failing to bring with them all of the requested documents. Despite specifically being asked to bring with them everything they had related to the Axe account, Guy and DePascale failed to bring with them extra paperwork and a computer file on the Axe account that Guy said that he had. (Apr. 22, 2009 Tr. at 19). Because of the alleged existence of these documents, Wilson said that he had to continue the deposition and asked to have the documents to review. (Id.). Wilson repeatedly asked DePascale for these new documents, and when DePascale eventually

responded, he sent Wilson the exact same documents that Wilson had been previously given. (Apr. 22, 2009 Tr. at 19); (Defendant's Exs. 13, 14, 16). Wilson never received any of the additional documents, and it was not until a pre-trial hearing on December 18, 2008, (a year and two days after the filing of the amended complaint), when DePascale informed the trial court and Wilson that the documents testified to by Guy and referenced by him did not actually exist. (Dec. 18, 2009 Tr. at 14).

{¶16} In addition, the evidence shows that DePascale's deliberate disregard of telefax communications with opposing counsel further delayed the discovery proceedings. Despite DePascale's fervent position that he does not use a telefax machine and had told Wilson such during the below proceedings, the evidence is clear that there was a telefax machine at his law office, that faxes had been sent to and from his secretaries and Wilson through this telefax machine concerning their case, and that DePascale had been aware of the existence of such telefax communications. While the machine might not technically have been DePascale's machine, the machine clearly belonged to his partner who worked in the same law office as DePascale, and more importantly, DePascale was aware of the fact that faxes had been sent to and from his office concerning the case. (Apr. 22, 2009 Tr. at 42-43, 76). Despite the knowledge of these faxes, DePascale deliberately chose to ignore them. (Apr. 22, 2009 Tr. at 76).

{¶17} With respect to the unfounded claims of fraud, the record indicates that not only did DePascale claim that Axe had "fraudulently induced" Guy in performing services he never intended to pay for, but in DePascale's motion to strike the counterclaim, he accused Axe of "stealing the Plaintiff's labor and materials." (Motion to Strike, Doc. No. 16); (Defendant's Ex. 15). Consequently, after conducting Guy's deposition, Wilson sent a letter to DePascale requesting that he dismiss the fraud causes of action given the apparent lack of evidence DePascale had regarding whether Axe had intended to defraud Guy. (Apr. 22, 2009 Tr. at 13); (Defendant's Ex. 2).

{¶18} After receiving no response from DePascale regarding the dismissal of the fraud claims, Wilson filed a motion for summary judgment pertaining to the three fraud claims. (Apr. 22, 2009 Tr. at 13); (Motion for Summary Judgment, Doc. No. 69). DePascale failed to respond to the summary judgment motion, and as a result, the trial court granted the summary judgment motion on February 3, 2009. (Feb. 3, 2009 JE, Doc. No. 71). Even though DePascale claims on this appeal that he honestly believed that Axe had defrauded Guy and that he had other witnesses to support this claim, DePascale admitted at the sanctions hearing that the reason he had failed to respond to the motion for summary judgment was because the witnesses he had relied on for support of his fraud claims had changed their stories to the point where he no longer believed he could have in good faith

responded to the motion for summary judgment.  (Apr. 22, 2009 Tr. at 76).  Yet DePascale failed to mention this reason even at the original trial held on February 11, 2009.  Instead, DePascale stated,

> **I have two requests of the court.  The first request is a continuance for reasons which I will delineate.  The second request is if you deny the first request, my second request is for an oral Rule 41 notice of dismissal without prejudice, which I will follow up this afternoon with a written one.  It appears that my secretary, who is not hired by me but is maintained by my law firm, is a 40 watt bulb in a 100 watt job.  In addition to not sending Mr. Guy a notice of today's hearing so that he could be here.  And I mean I got him off the job to be here and have his witnesses here who were here last time, those three gentlemen sitting in the back of the room.  She opened mail while I was in trial in Champaign County four or five weeks, and stacked up all the stuff on this case and stored it.  So I never saw counsel's motion for summary judgment, which is why I never replied.**

(Feb. 11, 2009 Tr. at 5-6).

{¶19} In addition, DePascale argues that no sanctions should have been granted because at the time of the sanctions hearing Wilson had yet to charge his client, Axe, any attorney fees nor did Wilson have a contract with Axe evidencing such an agreement for his services in this case.  DePascale claims that because no attorney fees were actually "incurred" as a result of his alleged frivolous conduct, the trial court could not have awarded reasonable attorney fees under R.C. 2323.51.  R.C. 2323.51(B)(3) governs the amount of the award that a trial court can impose as sanctions:

**(3) The amount of an award made pursuant to division (B)(1) of this section that represents reasonable attorney's fees shall not exceed, and may be equal to or less than, whichever of the following is applicable:**

**(a) If the party is being represented on a contingent fee basis, an amount that corresponds to reasonable fees that would have been charged for legal services had the party been represented on an hourly fee basis or another basis other than a contingent fee basis;**

**(b) In all situations other than that described in division (B)(3)(a) of this section, the attorney's fees that were reasonably incurred by a party.**

Despite DePascale's argument, the Ninth District Court of Appeals rejected this very argument in *Mikhael v. Gallup*, 9th Dist. No. 22992, 2006-Ohio-3917, ¶¶18-22. In *Mikhael*, the attorney who was awarded sanctions for the legal fees he incurred as a result of the other party's frivolous conduct admittedly did not have a written agreement and did not collect any fees from his clients to defend them in the underlying matter. 2006-Ohio-3917, at ¶20. Nevertheless, the Ninth District held, "[u]nder our reading of R.C. 2323.51(B)(3), Mr. Gallup can recover any fees 'reasonably incurred' in defense of this litigation. The fact that Mr. Gallup chose not to 'collect' from the Scelzas for his defense of the within matter is not dispositive. Mr. Gallup 'incurred' legal fees through his work on behalf of the Scelzas and his colleagues and was entitled to charge them for these fees if he so decided." Id. at ¶21. We agree with the Ninth District's interpretation of R.C. 2323.51(B)(3), and find that although Wilson never charged Axe for his efforts in

-13-

defending him in this litigation, Wilson still incurred legal fees through his work on behalf of Axe and was entitled to charge Axe if he so decided.

{¶20} Finally, with respect to the actual award granted by the trial court, although it is unexplained in its judgment entry, the trial court appears to have awarded sanctions based on the amount of the number of hours performed by Axe's attorney multiplied by the average hourly rate charged in a typical civil case. The trial court found both Guy and DePascale equally responsible for Axe's damages; however, since Guy had shielded himself from liability in bankruptcy, the trial court only granted sanctions to reflect DePascale's portion of the damages. Based on the record, we find that there was some evidence to support its award. Axe's attorney submitted an itemized statement of his legal fees and expenses detailing the particular tasks and the hours that he had spent with respect to this case. (Defendant's Ex. 1). In total, Wilson spent a total of 105 hours working on this case, which was ultimately dismissed a year and two days later. Moreover, another local attorney testified that the average hourly rate that an attorney would charge on a similar civil case is $150 per hour. (Apr. 22, 2009 Tr. at 8).

{¶21} The only noteworthy fact we find with respect to the trial court's award is that it appears from the trial court's calculation that it should have sanctioned DePascale $500 more than it did: 150 multiplied by 105, equals

$15,750, and when divided in half (with respect to the trial court's determination that both Guy and DePascale were equally responsible), the amount is $7,875. But the trial court only sanctioned DePascale $7,375, which is $500 less than what would have been each parties' individual liability. Nevertheless, since no one has raised this particular issue on appeal, we decline to address it now.

{¶22} Overall, after reviewing the entire record, we find that there was some competent, credible evidence to support both the trial court's finding that DePascale engaged in frivolous conduct and the amount that the trial court's awarded as sanctions.

{¶23} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**