[Cite as *Murman v. Univ. Hosps. Health Sys., Inc.*, 2017-Ohio-1282.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

---

### JOURNAL ENTRY AND OPINION
### No. 104726

---

# MICHAEL E. MURMAN, GUARDIAN OF LEAH APEL, A MINOR, ET AL.

### PLAINTIFFS

vs.

# UNIVERSITY HOSPITALS HEALTH SYSTEMS, INC., ET AL.

### DEFENDANTS-APPELLEES

[Appeal by Diez-Arguelles & Tejedor, P.A.
Plaintiff-Appellant]

---

## JUDGMENT:
### AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-818388

**BEFORE:** Stewart, P.J., Laster Mays, J., and Jones, J.

**RELEASED AND JOURNALIZED:** April 6, 2017

**ATTORNEYS FOR APPELLANT**

Maria Tejedor
Carlos Diez-Arguelles
Diez-Arguelles & Tejedor, P.A.
505 N. Mills Avenue
Orlando, FL 32803

**Also Listed**

Michael E. Murman
Murman & Associates
14701 Detroit Avenue, Suite 555
Lakewood, OH 44107


**ATTORNEYS FOR APPELLEES**

**For University Hospitals Health Systems, Inc., et al.**

George M. Moscarino
Kris H. Treu
Mary E. White
Susan R. Massey
Moscarino & Treu, L.L.P.
1422 Euclid Avenue, Suite 630
Cleveland, OH 44115

**For David M. Burkons, M.D.**

W. Bradford Longbrake
Michael Ockerman
Douglas G. Leak
Hanna, Campbell & Powell, L.L.P.
3737 Embassy Parkway, Suite 100
Akron, OH 44333

MELODY J. STEWART, P.J.:

{¶1} This is an appeal from an order requiring appellant law firm Diez-Arguelles & Tejedor, P.A. to pay $20,770 expended by appellee University Hospital ("UH") to defend what the court found was a bad faith motion to vacate a settlement agreement. The law firm maintains that the court erred by awarding sanctions because it did not act in bad faith by filing the motion to vacate, but under a reasonable belief that the settlement agreement had been violated. UH requests that we find this appeal to be frivolous and award it attorney fees for this appeal.

{¶2} The court found sanctions appropriate under both Civ.R. 11 and R.C. 2323.51.

{¶3} Civ.R. 11 states that "[e]very pleading, motion, or other document of a party represented by an attorney shall be signed by at least one attorney of record * * *." An attorney's signature "constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that it is not interposed for delay."

{¶4} R.C. 2323.51(B)(1) applies more broadly than Civ.R. 11 and permits the court to award attorney fees and costs to any party adversely affected by frivolous conduct of another party or that party's attorney, even if that conduct is not relating to a pleading, motion, or other document. "Frivolous conduct" is defined by R.C. 2323.51(A)(2)(a)(I) as, among other things, conduct that "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation[.]"

{¶5} Civ.R. 11 uses a "subjective standard" of "bad faith" that goes beyond mere bad judgment; it sanctions conduct amounting to "dishonest purpose," "moral obliquity," "a breach of a known duty through some motive of interest or ill will," or that "partakes of the nature of fraud * * * with an actual intent to mislead or deceive another." *State ex rel. Bardwell v. Cuyahoga Cty. Bd. of Commrs.*, 127 Ohio St.3d 202, 2010-Ohio-5073, 937 N.E.2d 1274, ¶ 8. "Frivolous conduct, as contemplated by R.C. 2323.51(A)(2)(a), is judged under an objective, rather than a subjective standard * * *." *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 15, citing *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 21.

**{¶6}** Under both Civ.R. 11 and R.C. 2323.51, we review a trial court's decision to award sanctions for an abuse of discretion. If competent, credible evidence exists to support an award of sanctions, the award must stand. *Striker* at ¶ 9; *DiFranco* at ¶ 13. In addition, the abuse of discretion standard means that we cannot substitute our judgment for that of the trial court. *Bardwell* at ¶ 9, citing *State ex rel. Grein v. Ohio State Hwy. Patrol Retirement Sys.*, 116 Ohio St.3d 344, 2007-Ohio-6667, 879 N.E.2d 195, ¶ 1.

**{¶7}** The evidence shows that Leah Apel, through her court-appointed guardian Michael Murman, brought this medical malpractice action against UH and certain physicians and nurses involved with her birth. At the time the complaint was filed, Apel lived in Florida and was represented by Maria D. Tejedor of the law firm of Diez-Arguelles & Tejedor, P.A. Tejedor appeared in the court of common pleas pro hac vice by way of local counsel. During the pretrial phase, Murman gave notice of appearance as additional counsel on behalf of himself as Apel's guardian. Local counsel then gave "notice of substitution of counsel" asking the court to take notice that Murman "replaced" original local counsel and that original local counsel "are no longer counsel on this case and should be removed from all certificates of services [sic]."

{¶8} On the eve of trial, Apel and UH settled — trial would go forward against a single remaining defendant. The settlement would not, however, be immediately reduced to judgment. During the 14-day period between reaching the settlement and filing a stipulation of dismissal, Tejedor and Murman became involved in a fee dispute: Murman claimed an entitlement to a contingency fee on the settlement proceeds; Tejedor claimed Murman was to be paid on an hourly basis. Murman had the upper hand in this dispute: according to Tejedor, Murman, as Apel's court-appointed guardian, knew that all settlements had to be approved by the probate court and he allegedly told Tejedor that they had to "discuss his fee before he would sign the release."

{¶9} Despite the fee dispute, the parties submitted a stipulation for dismissal stating that they had an agreement to settle and were dismissing that part of the action with prejudice. The parties further agreed that the court would retain jurisdiction over the settlement agreement for enforcement purposes.

{¶10} On April 24, 2016, three days after the court reduced the settlement agreement to judgment, Tejedor filed a motion asking the court to "set aside" the settlement agreement under Civ.R. 60(B). Making no mention of the fee dispute with Murman, the motion claimed that UH cooperated and assisted other non-settling defendants in violation of the settlement agreement.

**{¶11}** An attorney for UH called Tejedor on April 26, 2016. That conversation was memorialized in a letter to Tejedor, the contents of which she does not dispute. *See* Tr. 18. Counsel for UH informed Tejedor that the motion to set aside the settlement agreement was completely without merit and that she should withdraw it. Tejedor agreed with counsel for UH that the court would likely deny her motion to set aside the settlement agreement. She asked about the status of the settlement proceeds and when UH would provide a release in order to pay out the proceeds. Counsel for UH responded by asking her why was she "inquiring about the settlement funds and the Release while at the same time * * * asking the Court to set aside the settlement." The phone conversation ended with counsel for UH asking Tejedor to "make a decision on which position you were taking, to finalize the settlement or set it aside."

**{¶12}** Tejedor called back four minutes later. She said that she was prepared to withdraw her motion to set aside the settlement agreement upon receipt of the settlement proceeds. Counsel for UH told Tejedor that he could not forward the settlement proceeds until he had approval from the probate court — a fact he confirmed in a separate discussion with Murman. Tejedor objected to counsel speaking with Murman, telling him that Murman had "no authority" to speak on Apel's behalf because he was merely the child's guardian and not local counsel. Counsel for UH pointed out that Murman had given notice of appearance as local counsel for Apel. The conversation concluded with counsel for UH again demanding that Tejedor withdraw the motion to set aside the settlement agreement or UH would file a brief in opposition and a request for sanctions.

**{¶13}** The next day, April 27, 2016, Tejedor caused a petition for the "appointment of emergency temporary guardian" for Apel to be filed in the Circuit Court for Seminole County, Florida.[1] The petition alleged that there was an "imminent danger" that Apel's property would be wasted, misappropriated, or lost unless immediate action was taken because "there is a pending partial settlement of a pending medical malpractice/negligence action that is currently in trial which necessitates the appointment of an emergency temporary guardian in order to do all things necessary to successfully conclude the pending partial settlement." The petition for the appointment of an emergency temporary guardian did not mention that Apel had a court-appointed guardian with respect to the action involving the settlement.

**{¶14}** UH filed a brief in opposition to the motion to set aside the settlement agreement and a request for sanctions. The day after UH filed its brief in opposition, Tejedor withdrew the motion to set aside the settlement agreement and filed a motion to *enforce* the settlement agreement. UH then filed a "renewed" motion for sanctions.

**{¶15}** In its judgment entry granting the motion for sanctions, the court stated:

---

[1]Although Tejedor did not sign the petition for the appointment of an emergency temporary guardian, she has not denied that the petition was filed at her direction.

The Court finds that plaintiffs' counsel filed the motion to set aside settlement in bad faith in order to obtain the settlement funds before they came due. The Court makes this finding based on representations made by plaintiffs' counsel to defense counsel and the fact that plaintiffs' [sic] contemporaneously filed conflicting pleadings in a Florida court. Pursuant to R.C. 2323.51 and Civ.R. 11, this Court orders sanctions and reasonable attorney fees to be paid by plaintiffs' counsel.

{¶16} Beginning first with Civ.R. 11, we find that the court did not abuse its discretion by granting the motion for sanctions. Although the terms of the settlement remain confidential, the parties apparently set forth some conditions of the settlement in a memorandum of settlement. In addition, the parties gave the court continuing jurisdiction to enforce the settlement. A settlement agreement is a binding contract. *Infinite Sec. Solutions, L.L.C. v. Karam Properties II*, 143 Ohio St.3d 346, 2015-Ohio-1101, 37 N.E.3d 1211, ¶ 16. As with any other kind of contract, the courts presume that the intent of the contracting parties resides in the language they choose to employ in the agreement. *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992).

{¶17} The motion to set aside the settlement agreement was premised on UH's alleged violation of an agreement not to cooperate with the remaining defendant in the case. Although Tejedor claimed that this term was discussed and was a "subject of the settlement," Tr. 16, she conceded that "there was nothing in writing." Tr. 21. An agreement to cooperate may have been discussed by the parties prior to finalizing the terms of the settlement agreement, but the court's retention of jurisdiction to enforce the settlement agreement extended only to those terms specifically contained in the agreement. The absence of any written term barring UH from actively cooperating with the remaining defendant means that Tejedor subjectively knew that she was asking the court to vacate the settlement agreement based on the violation of a term that did not exist in that agreement.

{¶18} Tejedor's bad faith in filing the motion to set aside the settlement was further demonstrated by her attempt to have a court in Florida contemporaneously enforce the same settlement that she was seeking to set aside in Ohio. There was competent, credible evidence to support a finding that Tejedor willfully filed the motion to set aside the settlement in an attempt to coerce UH into paying the settlement proceeds directly to her in order to bypass Murman with whom she had an attorney fee dispute. At the same time that Tejedor was conditioning her withdrawal of the motion to set aside the settlement on UH signing a release of the settlement funds, she was asking a Florida judge to appoint an emergency guardian who would order the funds released.

{¶19} Having obtained the emergency appointment of a temporary guardian in Florida, Tejedor withdrew the motion to set aside the settlement and, in a complete about-face, filed a motion to enforce the settlement. She did so without any mention of her prior motion to set aside the settlement agreement. These actions constituted competent, credible evidence to establish that Tejedor used the motion to set aside the settlement for the sole purpose of coercing UH into releasing the settlement proceeds without going through the probate court.

{¶20} Finally, in a motion for reconsideration of the preliminary order granting the motion for sanctions,[2] Tejedor stated that she "never indicated that [she] intended to call up [her] motion for hearing." Plaintiff's motion for reconsideration of the court's May 10 order granting defendant's motion for sanctions and attorney fees, at 2. Not only did Tejedor not intend to seek a hearing on the motion, she appeared vexed that UH even responded to the motion. She characterized UH's brief in opposition to the motion to set aside the settlement as "excessive" and that UH did not "mitigate their damages." *Id*. In addition, she claimed that "[t]he issue at hand could have likely been resolved absent Defendant's completely unnecessary filing and similarly, without intervention of the Court." *Id*. In essence, Tejedor's argument shows that her motion was not seriously made and that she had no intention of enforcing it. We cannot find that the court abused its discretion by concluding that Tejedor acted in bad faith by filing the motion to set aside the settlement.

---

[2] The court issued a judgment entry granting the motion for sanctions but reserved ruling on

**{¶21}** Compared to the subjective standard applied under Civ.R. 11, sanctions under R.C. 2323.51 can be imposed under the less restrictive "objective" standard to view the conduct of the sanctioned person — rather than focus on what the person subject to sanctions actually thought, an objective standard is essentially one that looks to what the reasonable person would have thought. *Harris v. Rossi*, 11th Dist. Trumbull No. 2016-T-0014, 2016-Ohio-7163, ¶ 19. We conclude that the court did not abuse its discretion by imposing sanctions because no reasonable attorney would have filed the motion to set aside the settlement without knowing that its purpose was to cause a needless delay and would unnecessarily increase the cost of litigation.

**{¶22}** Our discussion of the facts for purposes of Civ.R. 11 applies with equal force to the imposition of sanctions under R.C. 2323.51. In addition, other facts objectively showed that Tejedor knew there was no basis for her motion to set aside the settlement agreement.

---

the amount of sanctions for a later date.

**{¶23}** With Tejedor being less than forthright in the Florida court when seeking the appointment of an emergency temporary guardian — she was seeking to enforce a settlement she was concurrently trying to vacate and she failed to tell the Florida court that Apel already had a guardian — she filed the motion to enforce the settlement as soon as the Florida court appointed a temporary guardian. That motion made no mention of her prior claim that UH violated the terms of the settlement agreement. It stated only that the Florida court entered an order approving the settlement. The trial judge in this case was well aware that despite a Florida guardian being appointed, Murman had yet to be removed as guardian by the probate court. The trial judge likewise understood that the probate court had prior jurisdiction over the matter and was the only court that could remove Murman as guardian.

**{¶24}** At that point, Tejedor resorted to outlandish arguments to support her actions. For example, she told the court that Murman had no right to a contingency fee because he was not local counsel. While it is true that Murman initially filed a notice of appearance as "additional counsel in this action on behalf of himself, Michael E. Murman, Guardian of Leah Apel," the parties acted as though he was serving as local counsel for Tejedor. This conclusion is compelled for two reasons.

**{¶25}** First, Tejedor could not consistently argue that Murman was not acting as local counsel when she admitted that she was paying him an hourly fee for his services. *See* Plaintiff's supplemental motion to enforce settlement and response to hospital's motion for sanctions, at 4. In addition, Tejedor contested whether he did any work that would justify a contingency fee — she claimed that Murman "did not attend a single hearing, deposition or assist in any discovery." If Murman was nothing more than the attorney for the guardian, the ward's estate would have been responsible for his attorney fee, not Tejedor, and his contribution to the prosecution of the medical malpractice claims would have been irrelevant.

**{¶26}** Second, Tejedor's admission to practice pro hac vice required the association of an active Ohio attorney in good standing. *See* Gov.Bar.R. XII, Section 2(A)(7). When the complaint was filed, another attorney was acting as local counsel. That attorney, in response to Murman's notice of appearance, filed a "notice of substitution of counsel" asking the court to take notice that Murman "replaced" original local counsel and that original local counsel "are no longer counsel on this case and should be removed from all certificates of services [sic]." When the originally retained local counsel left the case, it meant that Murman had to step into that role, lest Tejedor would be in violation of the Ohio Supreme Court rules governing appearances pro hac vice. Without the services of local counsel, Tejedor's pro hac vice status would have been revoked and she could have been accused of the unauthorized practice of law. Tejedor made no objection to original local counsel's notice of substitution of counsel nor did she take steps to disabuse the court of the belief that Murman was acting as local counsel.

{¶27} Tejedor also argued that Murman had been improperly appointed guardian. This argument was without any basis. The complaint, a document that listed Tejedor as one of the attorneys for Apel (even though she had not sought admission to practice pro hac vice at that point), specifically alleged that Murman was appointed guardian. Attached as an exhibit to the complaint were the letters of guardianship issued by the probate court. At no point throughout the lengthy pretrial proceedings did Tejedor raise any objection to Murman's status as Apel's guardian. It was only when the fee dispute with Murman became intractable that Tejedor filed the motion to set aside the settlement agreement and questioned Murman's status as the child's guardian. The timing of Tejedor's objection to Murman as guardian for Apel suggested the opportunistic nature of her argument — during the hearing on UH's motion for sanctions, Tejedor complained that what UH's attorneys "want to do in this case now is hand the check over to a guardian who is wrongfully appointed * * *."

{¶28} Tejedor wanted UH to bypass the probate court approval process entirely (and her fee dispute with Murman) to have the settlement proceeds paid directly to her. UH repeatedly told Tejedor that it could not bypass probate court's approval of the settlement. And apart from the legal restrictions on UH paying the settlement without prior probate court approval, there was the practical consideration that if it was found to have improperly paid settlement proceeds, it might be open to liability for that error.

{¶29} The attack on the validity of the guardianship went so far as Tejedor's asking the court to "quash the guardianship." Plaintiff's supplemental motion to enforce settlement and response to hospital's motion for sanctions at 2. That same motion, however, stated that "[t]he Probate Court is the court who has justification [sic] on appointing guardians and settling the accounts of wards. The trial court does not have jurisdiction over said matters." *Id.* at 7. Having conceded that the probate court had jurisdiction over the guardianship, it is unclear why the motion asked the trial court to quash the guardianship.

{¶30} There was more than enough competent, credible evidence to show objectively that Tejedor engaged in frivolous conduct for purposes of R.C. 2323.51. The court did not abuse its discretion by awarding sanctions under the statute.

{¶31} Finally, we address UH's motion for sanctions under App.R. 23.

{¶32} App.R. 23 states: "If a court of appeals shall determine that an appeal is frivolous, it may require the appellant to pay reasonable expenses of the appellee including attorney fees and costs." An appeal is frivolous when it presents "no reasonable question for review." *Talbott v. Fountas*, 16 Ohio App.3d 226, 475 N.E.2d 187 (10th Dist.1984).

**{¶33}** The appeal in this case is not premised on established questions of law for which the appellant fails to make a good faith argument suggesting why the law should be changed; it maintains that the court abused its discretion by finding violations of Civ.R. 11 and R.C. 2323.51. Unlike clear issues of law, claims of an abuse of discretion are open to enough interpretation that it is difficult to conclude that the appeal in this case is frivolous. Appellee's motion for sanctions is denied.

**{¶34}** Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
MELODY J. STEWART, PRESIDING JUDGE

ANITA LASTER MAYS, J. and
LARRY A. JONES, SR., J., CONCUR