[Cite as *Marshall v. Cooper & Elliott, L.L.C.*, 2017-Ohio-4301.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

### JOURNAL ENTRY AND OPINION
### No. 104934

## KATHLEEN MARSHALL

### PLAINTIFF

vs.

## COOPER & ELLIOTT, ET AL.

### DEFENDANTS

[Appeal by Michael Dolan, Third-Party Defendant/Appellant]

## JUDGMENT:
### AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-13-817284

**BEFORE:** E.A. Gallagher, P.J., E.T. Gallagher, J., and Laster Mays, J.

**RELEASED AND JOURNALIZED:** June 15, 2017

**ATTORNEY FOR APPELLANT/CROSS-APPELLEE**

Michael O'Shea
Lipson O'Shea Legal Group
700 West St. Claire Avenue, Suite 110
Cleveland, Ohio 44113


**ATTORNEY FOR APPELLEE/CROSS-APPELLANT**

John R. Christie
Lewis Brisbrois L.L.P.
1375 East Ninth Street, Suite 2250
Cleveland, Ohio 44114

EILEEN A. GALLAGHER, P.J.:

{¶1} This appeal involves the trial court's ruling on a request for sanctions under Ohio's frivolous conduct statute, R.C. 2323.51, awarding third-party defendant-appellant/cross-appellee Michael Dolan $0 in attorney fees for the frivolous conduct of third-party plaintiff-appellee/cross-appellant Anthony O. Calabrese, III and his counsel, John Christie. Calabrese challenges the trial court's determination that he and Christie engaged in frivolous conduct under R.C. 2323.51. Dolan contends that the trial court erred in awarding him no attorney fees for the frivolous conduct. Finding no merit to the appeal or cross-appeal, we affirm the trial court's judgment.

**Factual and Procedural Background**

{¶2} In November 2013, Kathleen Marshall ("Marshall") filed a complaint asserting claims of breach of contract, conversion, fraud and civil conspiracy to commit fraud against Calabrese, the Calabrese Law Firm, L.L.C., Cooper & Elliott, L.L.C., Rex Elliot and Charles Cooper, Jr.[1] Marshall alleged that her ex-husband, Timothy Marshall, had not received his proper share of attorney fees awarded in the settlement of a class action on which he had worked together with Cooper & Elliott and Dolan. Marshall claimed that there had been an agreement between Timothy Marshall, Cooper & Elliott and Dolan that any attorney fees awarded in the settlement of the class action would be

---

[1]Cooper & Elliott, L.L.C., Rex Elliot and Charles Cooper, Jr. are hereinafter referred to collectively as "Cooper & Eliott." Calabrese and the Calabrese Law Firm, L.L.C. are hereinafter collectively referred to as "Calabrese."

split equally between them, with one-third of the award going to each and that Cooper & Elliott improperly diverted a portion of the fees due Timothy Marshall to Calabrese in order to keep the funds out of Timothy Marshall's possession during the pendency of his divorce from Marshall, depriving her of access to those funds.[2]

{¶3} In July 2014, Calabrese filed an answer, a counterclaim against Marshall and a third-party complaint asserting claims for breach of contract, unjust enrichment and slander against Dolan. Calabrese alleged that the parties had agreed to a four-way split of any attorney fee award — 50% to Cooper & Elliott, 25% to Calabrese and 25% to Timothy Marshall and Dolan. Calabrese sought to recover any amount Calabrese might be required to pay Marshall on her claims as contribution from Dolan as well as compensatory and punitive damages on his slander claim. Calabrese's third-party complaint did not identify the alleged defamatory statements or other facts upon which his slander claim was allegedly based.

{¶4} Dolan filed an answer to Calabrese's third-party complaint and a counterclaim against Calabrese for fraud and tortious interference with Dolan's employment as an assistant county prosecutor for Cuyahoga County. Calabrese filed an answer denying the material allegations of Dolan's counterclaim.

{¶5} On April 1, 2015, the trial court granted summary judgment in favor of Cooper & Elliott and Calabrese on the claims asserted in Marshall's complaint. Marshall

---

[2]Marshall was assigned Timothy Marshall's interest in the allegedly diverted funds as part of their divorce.

filed for bankruptcy and Calabrese's counterclaim against her was stayed. Accordingly, all that remained for trial was Calabrese and Dolan's claims against each other. Trial was scheduled to begin on August 3, 2015. On the morning of trial, Calabrese and Dolan voluntarily dismissed their claims against one another without prejudice pursuant to Civ.R. 41(A).

{¶6} On August 28, 2015, Dolan filed a motion for attorney fees and sanctions pursuant to Civ.R. 11 and R.C. 2323.51 against Calabrese, Christie and Christie's law firm, Stefanick & Christie, L.L.C. Dolan claimed that Calabrese and Christie had engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(ii)-(iii) by falsely alleging that Dolan was contractually obligated to pay attorney fees to Timothy Marshall despite admissions by Calabrese to the contrary, by litigating Calabrese's attorney fees claims even though Calabrese and Christie were aware that attorney fee disputes were to be arbitrated or mediated by the local bar association or the Ohio State Bar Association pursuant to Prof.Cond.R. 1.5 and because (1) the third-party complaint did not allege facts necessary to support a claim of slander, (2) Calabrese had conducted no discovery relating to his slander claim and (3) his trial brief and jury instructions contained no mention of his slander claim. In support of the motion, Dolan attached a series of email exchanges between his counsel, Michael O'Shea and Christie, in which O'Shea advised Christie of Dolan's intention to seek sanctions if Calabrese's claims against Dolan were not dismissed and otherwise indicating the terms upon which the parties would agree to resolve their dispute. Calabrese opposed the motion, arguing that the evidence at trial

would have established that his claims were meritorious and that, even if he could not prevail on his claims, a "mere inability to prevail" did not constitute frivolous conduct. Calabrese disputed that he had, in fact, admitted many of the "admitted facts" referenced in Dolan's motion and claimed, with respect to his slander claim, that he would have established at trial that Dolan had "encouraged and convinced" Marshall to bring her action against Calabrese by "speaking falsehoods" about him and had also made "many oral comments" to one of Calabrese's associates in an attempt to encourage him to terminate his business relationship with Calabrese.

{¶7} On March 28, 2016, the trial court held the first of two hearings on Dolan's motion for attorney fees and sanctions. A transcript of the hearing is not part of the record on appeal.

{¶8} On May 6, 2016, the trial court issued a journal entry granting Dolan's motion for attorney fees and sanctions against Calabrese and Christie pursuant to R.C. 2323.51.[3] The trial court found that Calabrese and Christie had engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(i) and (ii) by filing and maintaining fee dispute claims despite their "clear knowledge of the law" that Calabrese was obligated under Prof.Cond.R. 1.5 to arbitrate or mediate any fee dispute with the local bar association or the Ohio State Bar Association. The court indicated that Calabrese and Christie's

---

[3]The trial court denied Dolan's motion to the extent he sought attorney fees and sanctions under Civ.R. 11. The trial court also denied the motion to the extent it sought sanctions against Christie & Stefanick, L.L.C., concluding that "insufficient evidence was presented concerning the law firm."

"deliberate decision to ignore Calabrese's obligation to follow the law and Rules of Professional Conduct" constituted "bad faith," "serve[d] an improper purposes including needless litigation" and "showed a lack of a good faith argument in law."   The trial court further found that Calabrese and Christie had engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(i), (iii) and (iv) by filing and maintaining a slander claim that was "not supported by credible evidence" and that Calabrese and Christie "demonstrated no intent on pursuing."   The trial court found that Dolan had been adversely affected by the frivolous conduct and indicated that a further hearing would be scheduled "to determine what sanctions are to be awarded to [Dolan]."

{¶9} The hearing on the amount of sanctions to be awarded Dolan was held on August 15, 2016.  O'Shea testified[4] that he had spent 87.6 hours from July 18, 2014 through August 10, 2016 defending the third-party complaint and pursuing sanctions relating to same.[5]   In support of his testimony, O'Shea submitted time sheets identifying the tasks he had performed and the time spent on each.   No hourly rate was listed on the time sheets.  O'Shea also testified regarding his background and expertise in litigation matters and indicated that, in his experience, a $275 hourly rate was "reasonable" and "very normal" for an attorney in Cuyahoga County for legal work of this type.

---

[4]O'Shea was the only person to testify at the hearing.   The parties agreed to the use of narrative testimony by legal counsel with cross-examination by opposing counsel.   The parties also agreed not to present any expert testimony at the hearing.

[5]Dolan did not seek, and O'Shea did not testify regarding, any legal expenses or costs incurred by Dolan in connection with the defense of the third-party complaint.

{¶10} O'Shea further testified that he had no written fee agreement with Dolan to represent him on the third-party complaint, had never had any discussions with Dolan about what his hourly rate or fees would be and had not yet billed Dolan for any of the work he had performed on the case. He explained that he had a long-term personal and professional relationship with Dolan and that pursuant to an "arrangement" with Dolan, what amount, if any, Dolan paid O'Shea for his work on this matter would be determined at some point in the future based upon the outcome of the sanctions motion and the collectibility of Calabrese and Christie. As he explained:

It's not a contingency fee case.

I will disclose to the Court that in fact Mr. Dolan and I have an arrangement where he has not had to pay me a penny for the representation to date that I have; we were going to wait to see how we do relative to the sanctions matter here and then determine if the Court makes such a ruling the collectibility factor of both Mr. Christie and Mr. Calabrese.

{¶11} O'Shea further explained that although he ultimately expected to bill Dolan for all the legal work he performed in this matter, if Dolan received even a nominal sanctions award, he expected to "write off" a significant portion of his fees:

Q. I want to make sure I understood your testimony earlier. Mr. Dolan [has] never gotten a bill for this matter?

A. Yes.

* * *

Q. And if the Judge were to award one dollar in sanctions, would Mr. Dolan get a bill?

A. Yeah.

Q.   And would that bill consist of the 80-some-odd hours that you're asking this Court to award?

A.   The bill itself absolutely would.

Q. But you would write off a significant portion of it, would you not, sir?

A.   It depends.  I would think so, Mr. Christie, to be honest with you because he's a friend of mine, but I don't believe Mr. Dolan would allow me to write all of that off; he's that kind of guy.

* * *

THE COURT: Now, you said that you were — I was a little unclear on the impact of this Court's ruling on generating a bill to your client.

You're requesting $20,845 plus another 11.8 hours at 275, whatever that total is.  You're requesting that amount but it was unclear to me if I awarded a lesser amount how that was going to be generated in terms of the bill to the client.

MR. O'SHEA: Candidly, your Honor, whatever amount the Court orders Mr. Christie and/or Mr. Calabrese to pay, assuming that we get it, I would have to then make a determination about whether we're going to balance bill Mr. Dolan for anything else, your Honor.

 * * *

So whatever amount that we would get as a result of the sanctions in this case I would certainly apply towards the ultimate bill to Mr. Dolan and then depending on what that amount is, your Honor, I may or may not balance bill or hold Mr. Dolan to pay me the balance.  But he's the kind of guy that would argue with me about stuff like that.

* * *

THE COURT: * * * [D]id you discuss the hourly rate with him at the time this relationship was created?

MR. O'SHEA: I don't think so, Judge.

* * *

THE COURT: So it was some hourly rate or fee bill concept contemplated by you and he; is that correct?

MR. O'SHEA: At some point in time we would work out a payment arrangement. * * * [Y]ou know when you're representing friends and family, it's always a little complicated to be honest with you, Judge, so in the context of this case, if we were to be unsuccessful in the sanctions part of this, then I'm not quite sure how I will make Mr. Dolan pay me because this is kind of like a novel kind of arrangement but, you know, I thought the case would go away very quickly at the beginning, Judge, so I don't think we talked about it in detail.

{¶12} On August 19, 2016, the trial court issued a judgment entry awarding Dolan $0 in sanctions. The trial court held that although Dolan had established that Calabrese and Christie had engaged in frivolous conduct and that he had been adversely affected by such conduct, Dolan did not establish that he "incurred" any legal fees as a result of such conduct. Based on the absence of any fee agreement between Dolan and O'Shea, O'Shea's failure to bill Dolan for his services and O'Shea's testimony that the amount of legal fees he would charge Dolan, if any, depended on the ruling on the sanctions motion, the trial court determined that any "amount [Dolan] may pay O'Shea in the future for O'Shea's legal services is speculative" and that Dolan, therefore, had "failed to prove that he incurred compensable costs and fees as a result of [Calabrese and Christie's] frivolous conduct."

{¶13} Dolan appealed the trial court's ruling, raising the following assignment of error for review:

> The trial court erred when it imposed legal prerequisites not found in RC 2323.51 as a condition precedent to the award of attorney fees after finding appellee's conduct to be frivolous.

{¶14} Calabrese filed a cross-appeal, raising the following assignment of error:

> Whether or not sanctions were warranted when the merits of the claims have never been determined.

We will address Calabrese's assignment of error first.

**Law and Analysis**

**Determination that Calabrese and Christie Engaged in Frivolous Conduct under R.C. 2323.51**

{¶15}  In his cross-appeal, Calabrese argues that the trial court erred in concluding that he and Christie engaged in frivolous conduct under R.C. 2323.51. Calabrese's argument is meritless.

{¶16} As defined in R.C. 2323.51(A)(2)(a), "frivolous conduct" includes conduct by a party to a civil action or his or her counsel that (1) "obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation," (2) "is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law," (3) "consists of allegations or other factual contentions that have no evidentiary support or, if specifically

so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery" or (4) "consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief." R.C. 2323.51(A)(2)(a)(i)-(iv). "Conduct" is defined, in relevant part, as "[t]he filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action[.]" R.C. 2323.51(A)(1)(a).

{¶17} Whether conduct is "frivolous" under R.C. 2323.51(A)(2)(a) "is judged under an objective, rather than a subjective standard," *State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 15, "that looks to what the reasonable person would have thought." *Murman v. Univ. Hosps. Health Sys.*, 8th Dist. Cuyahoga No. 104726, 2017-Ohio-1282, ¶ 21. A claim is frivolous under R.C. 2323.51(A)(2)(a) if "no reasonable lawyer would have brought the claim in light of the existing law." *ABN AMRO Mtge. Group, Inc.*, *v. Evans*, 8th Dist. Cuyahoga No. 98777, 2013-Ohio-1557, ¶ 20.

{¶18} Calabrese concedes in his brief that "[t]he facts and circumstances set forth in the trial court's order are accurate, as to what occurred"; however, he argues that the conduct at issue does not support a finding of frivolous conduct or an award of sanctions

as a matter of law because his claims have "never been decided upon their merits." We disagree.

**{¶19}** In this case, the trial court held that Calabrese and Christie engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(i)-(ii) by filing and maintaining fee dispute claims despite their "clear knowledge of the law" that Calabrese was obligated under Prof.Cond.R. 1.5 to arbitrate or mediate any fee dispute with the local bar association or the Ohio State Bar Association. The court indicated that Calabrese and Christie's "deliberate decision to ignore Calabrese's obligation to follow the law and Rules of Professional Conduct" constituted "bad faith," "serve[d] an improper purpose including needless litigation" and "showed a lack of a good faith argument in law." The trial court further found that Calabrese and Christie had engaged in frivolous conduct under R.C. 2323.51(A)(2)(a)(i), (iii) and (iv) by filing and maintaining a slander claim that was "not supported by credible evidence" and as to which Calabrese and Christie "demonstrated no intent on pursuing."

**{¶20}** There is no requirement in R.C. 2323.51 that the party seeking sanctions be the prevailing party in the underlying action or that the claims at issue be decided on their merits before a party can be found to have engaged in frivolous conduct. *See Bowling v. Stafford & Stafford Co., L.P.A.*, 1st Dist. Hamilton No. C-090565, 2010-Ohio-2769, ¶ 7; *Hunt v. Allen*, 5th Dist. Licking No. 11-CA-70, 2012-Ohio-1212, ¶ 26. Calabrese has cited no authority in support of his contention that a finding of frivolous conduct is "premature at best" where a claim has not been decided on its merits.

{¶21} Furthermore, the reason Calabrese's claims were not decided on their merits was because Calabrese voluntarily dismissed his third-party complaint on the day of trial. It is well established that a motion for sanctions under R.C. 2323.51 survives a voluntary dismissal because, were it otherwise, "a party could force a defendant to expend significant time and money to defend an arguably frivolous action and then dismiss that action just prior to trial with little if any consequence." *Gaier v. Kessler*, 97 Ohio App.3d 782, 785, 647 N.E.2d 564 (2d Dist.1994); *see also AMRO Mtge. Group*, 2013-Ohio-1557, at ¶ 21. "In that circumstance, the goal of * * * R.C. 2323.51, which is to prevent parties from using the judicial process to harass one another, would be significantly less achievable." *Gaier* at 785.

{¶22} To the extent Calabrese otherwise seeks to challenge the trial court's determination that he and Christie engaged in frivolous conduct, we note, as stated above, that Calabrese failed to file a transcript of the March 28, 2016 hearing on Dolan's motion for sanctions. Because Calabrese failed to provide this court with a transcript necessary for review of this issue, we must presume regularity in the proceedings. *See, e.g., Bodrock v. Bodrock*, 8th Dist. Cuyahoga No. 104177, 2016-Ohio-5852, ¶ 18 ("Without a complete transcript of the matters relevant to an appeal, we must presume the regularity of the trial court's proceedings."); *see also Alexander v. Yackee*, 5th Dist. Stark No. 2008CA00200, 2009-Ohio-1387, ¶ 60-71 (where claim of frivolous conduct was based upon appellant's denial of the existence of a business partnership in contradiction with information contained in tax returns and appellant failed to file the transcript of the

hearing in which sanctions were awarded against him pursuant to R.C. 2323.51(B)(2)(a), appellate court had to presume the regularity of the proceedings because assignment of error could not be adequately reviewed without the transcript); *Dawson v. Rockenfelder*, 5th Dist. Stark No. 1997CA00280, 1998 Ohio App. LEXIS 748, *3 (Feb. 9, 1998) (in the absence of a transcript of the proceedings relating to sanctions award for frivolous conduct, appellate court could not review the propriety of the trial court's finding that appellant engaged in frivolous conduct or the reasonableness of the fees awarded).

{¶23} Calabrese's assignment of error is overruled.

**Trial Court's Failure to Award Attorney Fees for Frivolous Conduct**

{¶24} In his assignment of error, Dolan contends that the trial court erred in awarding him no attorney fees for Calabrese and Christie's frivolous conduct under R.C. 2323.51. Specifically, Dolan claims that the trial court acted "arbitrarily" and erred as a matter of law in "mandat[ing] a written fee agreement and prior billings between a lawyer and client" as a "prerequisite" to an award of legal fees under R.C. 2323.51(B)(3).

{¶25} Pursuant to R.C. 2323.51(B)(1), "any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil action or appeal." If the representation is not on a contingent fee basis, the amount of reasonable attorney fees that may be awarded for frivolous conduct "shall not exceed, and may be equal to or less than * * * the attorney's fees that were reasonably incurred by a party." R.C. 2323.51(B)(3)(b).

**{¶26}** R.C. 2323.51 does not mandate an award of attorney fees for frivolous conduct. Rather, the decision whether to award attorney fees under R.C. 2323.51(B)(1) rests within the sound discretion of the trial court. *Internatl. Union of Operating Engineers, Local 18 v. Laborers' Internatl. Union of N. Am., Local 310*, 8th Dist. Cuyahoga No. 104774, 2017-Ohio-1055, ¶ 10 ("[E]ven in instances where frivolous conduct exists, a trial court may, in its considerable discretion, deny a request for attorney fees."), citing *Scott v. Nameth*, 10th Dist. Franklin No. 16AP-64, 2016-Ohio-5532, ¶ 32; *Hardin v. Naughton*, 8th Dist. Cuyahoga No. 99182, 2013-Ohio-2913, ¶ 21 ("R.C. 2323.51 does not mandate the award of sanctions if a trial court finds frivolous conduct as defined under the statute — instead, the statute bestows the trial court with discretion to impose sanctions."). Thus, an appellate court will not disturb a trial court's decision to grant or deny a motion for attorney fees under R.C. 2323.51(B)(1) absent an abuse of discretion. *DiFranco*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, at ¶ 13; *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11; *Internatl. Union of Operating Engineers* at ¶ 11.

**{¶27}** When applying an abuse of discretion standard, we cannot substitute our judgment for that of the trial court. A trial court abuses its discretion only if its decision is unreasonable, arbitrary or unconscionable. *DiFranco*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, at ¶ 13; *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983). "'A decision is unreasonable if there is no sound reasoning process that would support that decision.'" *Ockunzzi v. Smith*, 8th Dist.

Cuyahoga No. 102347, 2015-Ohio-2708, ¶ 9, quoting *AAAA Ents. Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990). An abuse of discretion may also be found where the trial court "'applies the wrong legal standard, misapplies the correct legal standard, or relies on clearly erroneous findings of fact.'" *Ockunzzi* at ¶ 9, quoting *Thomas v. Cleveland*, 176 Ohio App.3d 401, 2008-Ohio-1720, 892 N.E.2d 454, ¶ 15 (8th Dist.).

{¶28} In this case, the trial court declined to award Dolan any portion of the attorney fees he claimed as sanctions under R.C. 2323.51 on the ground that Dolan had failed to establish that he "incurred" any obligation to pay any legal fees in this matter. As the trial court explained:

> For the Court to award an amount of sanctions, Dolan must be "adversely affected by the frivolous conduct" and must have "incurred" court costs, reasonable attorney's fees, and other reasonable expenses that are connected with the civil action or appeal. While this Court has ruled that the Third-Party Plaintiffs' conduct constituted frivolous conduct under the statute, and that Dolan was adversely affected, Dolan has not established that he "incurred" any of the compensable costs, fees, or expenses. Dolan and O'Shea did not agree to an hourly rate or contingency fee for O'Shea's legal services to be charged when O'Shea's services started in this case. O'Shea has not billed Dolan any amount due for his services. Furthermore, the amount O'Shea may bill, will be determined based on the outcome of this Court's sanctions determination. Therefore, this Court cannot determine that Dolan has "incurred" any obligation to pay any legal fees in this matter because of the conduct of Third-Party Plaintiffs.
>
> To award Dolan compensation under this statute for an amount he may pay O'Shea in the future for O'Shea's legal services is speculative. As result, Dolan has failed to prove that he incurred compensable costs and fees as result of Third-Party Plaintiffs['] frivolous conduct.

**{¶29}** Thus, the trial court's decision to award Dolan $0 in legal fees was not, as Dolan contends, based simply on the fact that there were no prior billings or "written fee agreement" between Dolan and O'Shea, but rather, based on the finding that there was no fee agreement of any kind between O'Shea and Dolan that would legally obligate Dolan to pay any legal fees for O'Shea's work in this matter.

**{¶30}** The interpretation of a statute is an issue of law, which we review de novo. *See, e.g., State v. Vanzandt*, 142 Ohio St.3d 223, 2015-Ohio-236, 28 N.E.3d 1267, ¶ 6. Where, as here, a statute is unambiguous and definite, we must apply the plain meaning of the statute as written. *Antoon v. Cleveland Clinic Found.*, 148 Ohio St. 3d 483, 2016-Ohio-7432, 71 N.E.3d 974, ¶ 20 ("'An unambiguous statute must be applied in a manner consistent with the plain meaning of the statutory language * * *.'"), quoting *State ex rel. Burrows v. Indus. Comm.*, 78 Ohio St.3d 78, 81, 676 N.E.2d 519 (1997).

**{¶31}** Black's Law Dictionary defines "incur" as "[t]o suffer or bring on oneself (a liability or expense)." *Black's Law Dictionary,* 885 (10th Ed.2014); *see also Webster's Third New International Dictionary,* 1146 (1993) (defining "incur," in relevant part, as "to become liable or subject to"). "Liability" is defined as "[t]he quality, state, or condition of being legally obligated or accountable; legal responsibility to another or to society, enforceable by civil remedy or criminal punishment" or "[a] financial or pecuniary obligation in a specified amount." *Black's Law Dictionary* at 1053. "Expense" is defined as "[a]n expenditure of money, time, labor, or resources to accomplish a result; esp., a business expenditure chargeable against revenue for a specific

period." *Id.* at 698. Thus, legal fees are "incurred" under R.C. 2323.51(B)(1) and R.C. 2323.51(B)(3)(b) when a party has a legal obligation to pay them or otherwise becomes legally accountable for them, regardless of whether the fees have been or will be paid. *See Grove v. Gamma Ctr.*, 3d Dist. Marion No. 9-14-29, 2015-Ohio-1180, ¶ 132-137; *see also Lakeview Holding (OH), L.L.C. v. Haddad*, 8th Dist. Cuyahoga No. 98744, 2013-Ohio-1796, ¶ 24 (appellant could not obtain attorney fees as a sanction under R.C. 2323.51 because she had "represented herself pro se throughout the lower court proceedings and thus did not incur any attorney fees"); *Grine ex rel. Grine v. Sylvania Schools Bd. of Edn.*, 6th Dist. Lucas No. L-06-1314, 2008-Ohio-1562, ¶ 62-63 (where attorney's son did not incur any fees with respect to her actions on his behalf, she was not entitled to an award of her attorney fees under R.C. 2323.51); *compare* R.C. 2323.51(A)(4) (defining "[r]easonable attorney's fees" and "attorney's fees" recoverable under R.C. 2323.51 where a suit or appeal is filed against a governmental entity or employee represented by the attorney general, prosecuting attorney, chief legal officer or other governmental attorney as "[t]he approximate amount of compensation and fringe benefits, if any, * * * that has been or will be paid by the state" in connection with the legal services that were rendered); Ohio Civ.R. 54(E) ("Whenever a provision of these rules authorizes a court to award attorney fees, including attorney fees described in the provision as 'caused' or 'incurred,' the court may award the reasonable value of the services performed by the attorney, whether or not the party represented by that attorney actually paid or is obligated to pay the attorney for such services performed.").

{¶32} Dolan contends that, under Ohio law, a lawyer "need not have a specific fee agreement" with a client or to have billed or sought payment from a client in order for the client to recover attorney fees for frivolous conduct under R.C. 2323.51. In support of his argument, [6] Dolan cites *Mikhael v. Gallup*, 9th Dist. Summit No. 22992, 2006-Ohio-3917. In that case, an attorney, Gallup, and his law firm filed a lawsuit against appellant on behalf of two clients for breach of a real estate purchase agreement. *Id.* at ¶ 2. The appellant, in turn, filed suit against Gallup, his firm and the clients for intrusion in seclusion, libel, slander and intentional infliction of emotional distress, arising out of a letter Gallup sent, on behalf of the clients, regarding appellant's alleged breach of the agreement. *Id.* at ¶ 2-3. Gallup represented himself, the clients and his firm in the litigation. *Id.* at ¶ 13. After granting appellees' motion for summary

---

[6] In his brief, Dolan repeatedly misstates the holdings of the cases he cites in support of his arguments. For example, although he claims that "the court awarded R.C. 2323.51 attorney fees to an [sic] pro bono attorney representing a civil defendant in *Rogers v. Hood*, [9th Dist. Summit No. 24374,] 2009-Ohio-5799," in that case, the appellate court reversed the trial court's attorney fee award under R.C. 2323.51, concluding that its findings regarding the plaintiff's conduct "do not merit an award of attorney fees" under R.C. 2323.51. *Id.* at ¶ 18. With respect to the issue of whether attorney fees may be awarded to pro bono counsel under R.C. 2323.51, the court declined to address the issue as moot. *Id.* at ¶ 20.

*Sawchyn v. Middleburg Hts.*, 8th Dist. Cuyahoga No. 66687, 1995 Ohio App. LEXIS 4288 (Sept. 28, 1995), did not involve an attorney fee award under R.C. 2323.51 to "government attorneys who do not charge an hourly fee," as Dolan contends. It involved the recovery of attorney fees the city's liability insurance carrier paid a law firm to defend the city, its law director and council president. *Id.* at *1-2.

Dolan also asserts that "[a] trial court errs when it arbitrarily denied an award of fees by imposing prerequisites not found in the statute upon a party and his counsel and disregards the uncontroverted evidence that counsel affirmatively met its burden showing that an award of sanctions

judgment, the trial court considered their motion for sanctions and attorney fees under R.C. 2323.51 and Civ.R. 11. *Id.* at ¶ 3. At the sanctions hearing, Gallup testified that he had no written agreement to defend the clients or his firm in the matter, but that he did have an oral agreement with the clients "[a]s far as fees." *Id.* at ¶ 20. He indicated, however, that he had not collected any fees from the clients or the firm for defending them in the matter and that he did not intend to do so in the future. *Id.* The trial court awarded appellees $8,900 in attorney fees. *Id.* at ¶ 4. The appellant appealed, arguing (as it relates to this case) that the trial court could not award attorney fees under R.C. 2323.51 "without the collection of fees or an agreement to collect fees." *Id.* at ¶ 5, 18-19. The appellate court rejected appellant's fee collection argument, concluding that collection of fees was not a prerequisite to an award of attorney fees under R.C. 2323.51(B)(3), and affirmed the trial court's attorney fee award under R.C. 2323.51 and Civ.R. 11. As the court explained:

> Under our reading of R.C. 2323.51(B)(3), Mr. Gallup can recover any fees "reasonably incurred" in defense of this litigation. The fact that Mr. Gallup chose not to "collect" from [the clients] for his defense of the within matter is not dispositive. Mr. Gallup "incurred" legal fees through his work on behalf of [the clients] and his colleagues and was entitled to charge them for these fees if he so decided.
>
> We find no abuse of discretion in the court's decision to award attorney fees to Appellees under either R.C. 2323.51 or Civ.R. 11.

*Id.* at ¶ 21-22.

---

was proper." However, none of the five cases he cites for that proposition actually supports it.

**{¶33}** The Third District addressed a similar issue in *Grove v. Gamma Ctr.*, 3d Dist. Marion No. 9-14-29, 2015-Ohio-1180. In that case, appellants argued that the trial court had erred in finding that certain attorney fees billed by appellee's counsel had been "incurred" by appellee under R.C. 2323.51(B)(1) where appellee's counsel told appellee he would "write the fees off." *Id.* at ¶ 130-131. At the hearing on appellee's motion for sanctions, appellee's attorney testified that appellee had not paid the fees that attorney had billed and that he had told appellee (1) he did not need to pay the fees "until we got done with the case" and (2) he was going to "write [the bill] off" if attorney fees were not awarded because he felt appellee had been "badly abused by the justice system." *Id.* at ¶ 131. The Third District rejected appellants' argument and affirmed the trial court's attorney fee award. *Id.* at ¶ 137-138. Interpreting R.C. 2323.51(B)(1), the court held that "a fee is 'incurred'" under R.C. 2323.51(B)(1) "when there is an expenditure of time and labor that a person is legally obligated or accountable for" and that appellee had satisfied that requirement:

> In this case, appellee's attorney indicated that he had expended time and labor and that he had been keeping track of the hours and amount billed to appellee. While he did testify that he would "write off" the amount if fees were not awarded, he could decide ultimately that he was not going to do that, and there is no indication that appellee would not be legally obligated to pay his attorney for the expenses reasonably incurred. Therefore, like

the trial court, we cannot find that the expenses were not "incurred" merely

on the basis of appellee's attorney's stated generosity.

*Id.* at ¶ 136-137.

{¶34} In support of its reasoning, the court cited the Ohio Supreme Court's decision *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, observing that it "seem[s] to indicate that even though [a] party may not ultimately be obligated to pay the attorney fees that were billed, they were still incurred." *Grove* at ¶ 135. In *Striker*, the Ohio Supreme Court distinguished between fees that were "paid" by a party and those that were "incurred" by a party under R.C. 2323.51(B)(3). In *Striker*, the appellant filed a pro se complaint in the Fifth District Court of Appeals seeking a writ of mandamus to compel the appellees, the Shelby Municipal Court Clerk and the city of Shelby, Ohio, to make certain records available for inspection and copying under the Ohio Public Records Act. *Id.* at ¶ 1-2. Based on appellant's repeated claims that a private law firm was not authorized to represent them, appellees filed a motion for sanctions against appellant under R.C. 2323.51 and Civ.R. 11 in the court of appeals. *Id.* at ¶ 3-6. They requested sanctions in the amount of $3,503 — the amount the law firm had billed for the legal work it performed related to appellant's frivolous conduct. *Id.* at ¶ 7. Of the $3,503 in the legal fees billed by the law firm, the city had paid $312 out-of-pocket; the remainder had either been paid by or reimbursed by the city's insurance company under the city's insurance policy. *Id.* at ¶ 7-8. The Fifth District granted the motion for sanctions and awarded the clerk $3,503 in attorney fees pursuant

to R.C. 2323.51.  *Id.* at ¶ 9.   Appellant appealed to the Ohio Supreme Court, contending that the Fifth District abused its discretion in finding that he had engaged in frivolous conduct and in awarding the clerk $3,503 in attorney fees under R.C. 2323.51.  *Id.* at ¶ 10, 12, 23.

{¶35} The Ohio Supreme Court disagreed and affirmed the judgment of the Fifth District.  *Id.* at ¶ 28.   The court explained,

> [a]lthough the city paid only $312 in attorney fees, the full amount of $3,503 in attorney fees was incurred by the city and the insurance company acting on behalf of the city in defending the clerk against the frivolous assertions Striker made in his public-records case. * * * [B]ecause the reasonable attorney fees incurred as a result of Striker's frivolous assertions were $3,503, the court of appeals did not abuse its discretion in awarding the clerk that amount under R.C. 2323.51(B)(1).   A contrary interpretation would penalize parties that have the foresight to obtain liability insurance and would condone frivolous conduct against them.   We refuse to construe the frivolous-conduct statute to produce such an unreasonable result. * * *

*Id.* at ¶ 24-25; *see also State ex rel. Chrisman v. Clearcreek Twp.*, 12th Dist. Warren No. CA2013-03-025, 2014-Ohio-252, ¶ 21-23 (indicating that fees are "incurred" for purposes of R.C. 2323.51(B)(3) "when such fees are 'actually paid' or the party becomes 'obligated to pay'"), citing *State ex rel. Citizens for Open, Responsive & Accountable Govt. v. Register*, 116 Ohio St.3d 88, 2007-Ohio-5542, 876 N.E.2d 913, ¶ 24; *Drywall v.*

*Axe*, 3d Dist. Union No. 14-09-31, 2010-Ohio-986, ¶ 19 (where appellee's attorney never charged appellee for his work in defending appellee but "was entitled to charge [appellee] if he so decided," appellee "incurred" attorney fees within the meaning of R.C. 2323.51(B)(3)).

**{¶36}** This case is distinguishable from *Striker*, *Grove* and *Mikhael*. In *Striker*, the city would have been legally obligated to pay all of its counsel's legal fees, but for the fact that it had insurance coverage for a portion of those fees. In *Grove and Mikhael*, the attorney indicated that he would not "collect" on or would "write off" a debt that the client would otherwise be legally obligated to pay. In this case, by contrast, there was "an indication" that Dolan was not "legally obligated to pay his attorney." *Grove*, 2015-Ohio-1180, ¶ 137.

**{¶37}** In this case, O'Shea's testimony established not only that he had no written fee agreement with Dolan and had never billed Dolan for any of the work he performed on the case but also that he had no oral fee agreement whatsoever with Dolan. Although O'Shea claimed to have an "arrangement" with Dolan pursuant to which, the amount, if any, Dolan paid O'Shea would be determined at some point in the future, he testified that he had never had any discussions with Dolan about what his fees would be. Thus, this case does not involve a lawyer's decision not to "collect" or to "write off" fees that would otherwise be owed. In this case the trial court found that Dolan failed to establish that he had a legal obligation to pay any attorney fees in the first instance.

**{¶38}** Following a thorough review of the record, we find no error or abuse of discretion in the trial court's decision not to award Dolan attorney fees under the particular facts and circumstances in this case. The record contains competent, credible evidence supporting the trial court's determination that Dol failed to establish that he incurred any legal obligation to pay O'Shea's attorney fees in this matter. Dolan has not shown that the trial court required him "to prove * * * something the law does not require" or that the trial court otherwise acted unreasonably, arbitrarily or unconscionably in declining to award him attorney fees for Calabrese and Christie's frivolous conduct under R.C. 2323.51.

**{¶39}** Dolan's assignment of error is overruled.

**{¶40}** Judgment affirmed.

It is ordered that appellant and appellee share the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to the Cuyahoga County Court of Common Pleas to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
EILEEN A. GALLAGHER, PRESIDING JUDGE

EILEEN T. GALLAGHER, J., and
ANITA LASTER MAYS, J., CONCUR