[Cite as *Lansky v. Brownlee*, 2018-Ohio-3952.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

---

JOURNAL ENTRY AND OPINION
**No. 105408**

---

**JEFFREY A. LANSKY**

PLAINTIFF-APPELLANT/
CROSS-APPELLEE

vs.

**WILLIAM BROWNLEE, ET AL.**

DEFENDANTS-APPELLEES/
CROSS-APPELLANTS

[Appeal by Attorney Brent English]

APPELLANT/CROSS-APPELLEE

---

**JUDGMENT:**
AFFIRMED

---

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-14-833483

**BEFORE:** Laster Mays, J., Boyle, P.J., and S. Gallagher, J.

**RELEASED AND JOURNALIZED:** September 27, 2018

**FOR APPELLANT JEFFREY LANSKY**

Mary A. Lansky, pro se
5077-22 Concord Downs Lane 22
Aurora, Ohio 44202

**FOR APPELLANT BRENT L. ENGLISH**

Brent L. English
Law Offices of Brent L English
The 820 Building, 9th Floor
820 Superior Ave., West
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEES**

Brodie M. Butland
David C. Tryon
Porter, Wright, Morris & Arthur
950 Main Avenue, Suite 500
Cleveland, Ohio 44113

Maurice A. Thompson
208 E. State Street
Columbus, Ohio 43215

ANITA LASTER MAYS, J.:

{¶1}   Appellant attorney Brent L. English ("English") appeals the trial court's grant of summary judgment in favor of defendants-appellees William Brownlee ("W. Brownlee") and Lynde Brownlee ("L. Brownlee") (jointly referred to as the "Brownlees"), husband and wife, awarding sanctions pursuant to Civ.R. 11 and R.C. 2323.51 against attorney English arising from English's representation of Jeffrey Lansky ("Lansky").[1]   The Brownlees filed a cross-appeal challenging the amount of the award.   We affirm.

---

[1] On October 2, 2017, this court granted the motion to withdraw as counsel for Lansky filed by English and ordered that all notices on behalf of Lansky be directed to his widow.

**I.    Background and Facts**

{¶2}   Lansky served as mayor of the city of Maple Heights, Ohio from December 2007 to December 2015, president of city council from 1991 to 2003, and as a city councilman from 1987 to 1991.   Lansky died in March 2017.

{¶3}   The Brownlees are publishers of an internet website entitled Maple Heights News (www.MapleHeightsNews.org) reporting on city community news.   Most of the articles are authored gratis by the Brownlees, including an editorial blog entitled "Throwback Thursday" published on July 17, 2014.   The blog discussed the significant financial issues faced by the city from 2011 until the city was declared to be in fiscal emergency in 2015.   The blog also included a copy of campaign literature from Lansky's second mayoral campaign delineating his accomplishments during the first term.

{¶4}   The blog attributed a number of service reductions in the community to decisions made by Lanksy that were allegedly not caused or controlled by Lansky:

(1)      The closure of a fire station location was attributed to Lansky, though the fire chief made the decision to close the station due to budget cuts rather than use a smaller staff.

(2)      The city council and not Lansky voted to renegotiate the waste hauling agreement and eliminate curbside recycling.

(3)      Senior citizens services were not reduced or eliminated by Lansky.   Some services were provided by volunteer drivers instead of salaried drivers, and attempts were made to transport several citizens concurrently for required services instead of unilaterally.

(4)      Lansky did not veto legislation to place a property tax increase on the ballot as the blog alleged, but allowed it to pass by failing to veto or otherwise act within the period required by the city charter.

(5)      Contrary to the blog information, Lansky did not terminate the community safety town program. The program ended because funding was no longer

available to retain paid staff and residents did not respond to requests for volunteer assistance.

(6) City council, not Lansky, voted to stop using public funds to print and mail newsletters to residents.

(7) City council, not Lansky, voted to eliminate the budget appropriation for the "code red" emergency system.

{¶5} Lansky telephoned W. Brownlee demanding removal of the false statements. Lansky consulted with English who sent correspondence to the Brownlees stating the statements were false, defamatory, and ill-informed and requested the statements be retracted immediately.

{¶6} The Brownlees "lined through" certain representations after Lansky complained but the information remained on the website. A July 23, 2014 notice appeared on the site stating that:

[The blog] contained [three] errors. A letter from Mayor Lansky's lawyer informed us that he did not veto the 2013 property tax levy, that Fire Station #2 was closed at the direction of the fire chief, and there was no loss of service for senior transportation. These errors have been "struck out" and updated.

The original text was legible with the strike-through edit. The Brownlees respond that they used the correction format recommended by "The Reuters Handbook of Journalism" for blog corrections. Appellees' brief, p. 6.

{¶7} English asserts that the Brownlees were contentious, critical, and disrespectful to Lansky and others at city council meetings, particularly regarding budget cuts required as the result of revenue losses. Lansky pursued an action for defamation and intentional infliction of emotional distress, allegedly as the result of complaints received from citizens and concern about

his reputation due to the blog. Lansky charged that W. Brownlee had actual knowledge of the falsity of the statements due to his position as a city council member.

{¶8} The Brownlees argue that Lansky and English have engaged in a "'pattern of intimidation' in bringing meritless defamation suits against Lansky's political opponents" and that they were the ninth and tenth targets since 1994, a 20-year period. According to the Brownlees, Lansky threatened them with a lawsuit and told them that he did not want to settle. He also asked the Brownlees whether they carried homeowner's insurance to cover a judgment and refused the Brownlees' request that he identify in writing the inaccurate information. Lansky stated during deposition testimony that it was not his responsibility to tell the Brownlees which information was incorrect.

{¶9} In response to Lansky's complaint, the Brownlees counterclaimed for vexatious litigation and frivolous conduct, violation of Civ.R. 11, and malicious civil prosecution. The Brownlees asserted that Lansky's claims were made in bad faith, for improper purposes, were not supported by existing law and did not serve as the basis for establishing new law.

{¶10} On November 13, 2015, in a 28-page opinion, the trial court dismissed Lansky's claims for defamation and intentional infliction of emotional distress and granted summary judgment for the Brownlees. The trial court determined that the statements complained of were not factually false, the strike through methodology that the Brownlees employed to make corrections to the article was acceptable, and the evidence did not support a finding that the Brownlees acted with actual malice. The Brownlees' counterclaims for a vexatious litigator declaration and malicious prosecution were withdrawn, but the Brownlees continued their pursuit of sanctions.

**{¶11}** The parties appeared for the sanctions hearing required by R.C. 2323.51(B)(2)(a) on December 15, 2016. Lansky, who was unable to appear due to illness, was allowed to testify by affidavit. English testified that sanctions should not be imposed, and he objected to the claims by the Brownlees for attorney fees and expenses exceeding $160,000. The Brownlees relied on their briefs and affidavits.

**{¶12}** On December 28, 2016, the trial court issued an entry based on the trial court's review of the entire record. Sanctions were awarded pursuant to Civ.R. 11 and R.C. 2323.51 for: (1) $75 for the counterclaim filing fee; (2) $2,000 for the fees of Brownlees' primary counsel; (3) $5,000 for the fees of counsel assisting the primary counsel; and (4) costs and expenses totaling $2,319.94. The sanctions were imposed against Lansky and English, jointly and severally. On February 15, 2017, the trial court stayed the request of English and Lansky for findings of fact and conclusions of law due to the filing of this appeal.

**{¶13}** We affirm the judgment of the trial court.

## II.     Assignments of Error

**{¶14}** English presents two assignments of error. First, English argues that he did not engage in frivolous conduct warranting sanctions under R.C. 2323.51. Secondly, English asserts that his conduct did not violate a duty imposed by Civ.R. 11.

**{¶15}** Civ.R. 11 and R.C. 2323.51 are the two avenues available under Ohio law for recovery of attorney fees for claims of frivolous conduct. "[B]oth authorize the award of attorney fees as a sanction for frivolous conduct, [but] they have separate standards of proof and differ in application." *Bikkani v. Lee,* 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 18, citing *Sigmon v. S.W. Gen. Health Ctr.*, 8th Dist. Cuyahoga No. 88276, 2007-Ohio-2117, ¶ 14.

### A.     Frivolous Conduct Under R.C. 2323.51

**{¶16}** The discretion to award sanctions and attorney fees under R.C. 2323.51 is legislatively vested in the trial court.

> [A] decision on whether to award sanctions under R.C. 2323.51 will not be reversed absent an abuse of discretion. *State ex rel. Striker v. Cline*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 11, citing *Ron Scheiderer & Assocs. v. London*, 81 Ohio St.3d 94, 98, 689 N.E.2d 552 (1998).

*Brown v. Carlton Harley-Davidson, Inc.*, 8th Dist. Cuyahoga No. 101494, 2014-Ohio-5157, ¶ 6. An abuse of discretion "connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." (Citations omitted.) *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶17}** The standard for determining frivolous conduct under R.C. 2323.51 is objective. It "is determined without reference to what the individual knew or believed." *Hardin v. Naughton*, 8th Dist. Cuyahoga No. 99182, 2013-Ohio-2913, ¶ 14, citing *State Farm Ins. Cos. v. Peda*, 11th Dist. Lake No. 2004-L-082, 2005-Ohio-3405, and *Ceol v. Zion Indus., Inc.*, 81 Ohio App.3d 286, 610 N.E.2d 1076 (9th Dist.1992).

**{¶18}** The Ohio Supreme Court has elaborated:

> Frivolous conduct, as contemplated by R.C. 2323.51(A)(2)(a), is judged under an objective, rather than a subjective standard, [*State ex rel.*] *Striker*[ *v. Cline*, 130 St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, ¶ 21, and must involve egregious conduct. Frivolous conduct is not proved merely by winning a legal battle or by proving that a party's factual assertions were incorrect. *Ohio Power Co. v. Ogle*, 4th Dist. Hocking No. 12CA14, 2013-Ohio-1745, ¶ 29-30 ("'A party is not frivolous merely because a claim is not well-grounded in fact. * * * [R.C. 2323.51] was designed to chill egregious, overzealous, unjustifiable, and frivolous action. * * * [A] claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim"), quoting *Hickman v. Murray*, 2d Dist. Montgomery No. CA-15030, 1996 Ohio App. LEXIS 1028, 1996 WL 125916, 14 (Mar. 22, 1996).

*State ex rel. DiFranco v. S. Euclid*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, ¶ 15.

**{¶19}** The presence of one of the following factors supports a finding of frivolous conduct under R.C. 2323.51:

> "(i) It obviously serves merely to harass or maliciously injure another party to the civil action * * * or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.
>
> (ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.
>
> (iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.
>
> (iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief."

*Internatl. Union of Operating Engineers, Local 18 v. Laborers' Internatl. Union of N. Am., Local 310*, 8th Dist. Cuyahoga No. 104774, 2017-Ohio-1055, ¶ 14, quoting R.C. 2323.51(A)(2)(a)(i)-(iv).

**{¶20}** The trial court determined that, in contrast to Lansky's claims of character damage, Lansky testified during deposition that the Brownlees and their website have no credibility in the community, and that he could not identify anyone who was misled by the article. Lansky was also unable to demonstrate that he was exposed to public hatred by the statement that he vetoed legislation to raise property taxes, and could only offer that a few people were confused. In fact, Lansky admitted that vetoing the legislation would not have had a negative impact on his reputation in the community.

**{¶21}** The trial court determined that the Brownlees' act of revising the article in accord with published standards was reasonable as to the other false statements. Finally, the trial court

concluded that the Brownlees were entitled to judgment as a matter of law due to Lansky's inability to support the claims of the complaint and to demonstrate damages by clear and convincing evidence.

{¶22} A defamation complainant must demonstrate that the statement in issue is false, defamatory, published, caused injury, and that the defendant acted with the requisite degree of fault. *Am. Chem. Soc. v. Leadscope, Inc.*, 133 Ohio St.3d 366, 2012-Ohio-4193, 978 N.E.2d 832, ¶ 77, citing *Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 9, quoting *A & B-Abell Elevator Co. v. Columbus/Cent. Ohio Bldg. & Const. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995).

{¶23} To establish defamation of a public figure, a complainant must also establish that the defendant acted with actual malice. Actual malice means that the statement was made "with knowledge of falsity or a reckless indifference to their truth." *Murray v. Chagrin Valley Publishing Co.*, 2014-Ohio-5442, 25 N.E.3d 1111, ¶ 30 (8th Dist.).

{¶24} As English acknowledged in his brief, he is familiar with the level of proof required for defamation actions involving public figures. He does not deny the Brownlees' assertion that he has represented Lansky in similar actions over the 20 years, so he is experienced in litigating defamation actions. *See*, *e.g.*, this court's holding in *Lansky v. Rizzo*, 8th Dist. Cuyahoga No. 88356, 2007-Ohio-2500, where we explained the applicable standard of proof:

> To establish reckless disregard, the plaintiff must present clear and convincing evidence that the false statements were made with a "high degree of awareness of their probable falsity," or that "the defendant in fact entertained serious doubts as to the truth of his publication."

*Id*. at ¶ 19, quoting *Garrison v. Louisiana*, 379 U.S. 64, 74, 85 S.Ct. 209, 13 L.Ed.2d 125 (1964), and *St. Amant v. Thompson*, 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968).

{¶25} The trial court's opinion addressed each of the statements. The evidence demonstrated that the Brownlees did not know at the time of publication that Lansky's failure to sign the tax increase legislation did not constitute a veto and corrected the error.[2] The evidence failed to support that Lansky was harmed or exposed to public hatred, and the Brownlees' correction of the item was sufficient.

{¶26} Lansky admitted during his deposition that he had authority as the city's safety director to order the reopening of the fire station. The trial court concluded that the statement was true when made and properly corrected. It was also reasonable for the Brownlees to believe that, because Lansky took credit for the reopening of Safety Town, he had the authority to close it.

{¶27} On the recycling issue, the trial court concluded that, while the Brownlees knew that Lansky was not solely responsible for eliminating recycling, it was not unreasonable for them to attribute the decision to Lansky. The trial court determined that the statement regarding a reduction of van service for seniors did not rise to the level of defamation since adjustments to services were made, though there was no actual loss in service. The Brownlees also sufficiently corrected the statement.

{¶28} Finally, the trial court determined that the statements about the city newsletter and code red were not about Lansky so they could not be grounds for a defamation claim. As to all of the statements, the trial court did not find it unreasonable for others to "attribute actions or events that occur during a Mayor's administration directly to the Mayor, despite the fact that

others were also involved in carrying out the actions or events."  Journal entry No. 91723981 (Nov. 13, 2015), p. 17.

{¶29}   Viewing the evidence objectively, and considering whether any reasonable attorney would have brought the action in light of the existing law, we cannot say that the trial court abused its discretion in granting sanctions pursuant to R.C. 2353.51.  *Sigmon*, 8th Dist. Cuyahoga No. 88276, 2007-Ohio-2117, at ¶ 14.

{¶30}   We affirm the trial court's judgment issuing sanctions under R.C. 2323.51.

**B.**     **Civ.R. 11 Sanctions**

{¶31}   We also review a trial court's decision to grant or deny Civ.R. 11 sanctions under an abuse of discretion standard.  *ABN Amro Mtge. Group, Inc. v.  Evans*, 8th Dist. Cuyahoga No. 98777, 2013-Ohio-1557, ¶ 12, citing *Taylor v. Franklin Blvd. Nursing Home, Inc*., 112 Ohio App.3d 27, 677 N.E.2d 1212 (8th Dist.1996), and *Jurick v. Jackim*, 8th Dist. Cuyahoga No. 89997, 2008-Ohio-2346.  A plain reading of R.C. 2323.51 and Civ.R.11 reveals that "both the statute and the rule impose the same requirement on an attorney:  to prosecute only claims having merit under existing law."  *Sigmon* at ¶ 23.

{¶32} Our analysis under Civ.R. 11 is subjective in nature. It is dependent on what the individual knew or believed:

> The signature of an attorney or *pro se* party constitutes a certificate by the attorney or party that the attorney or party has read the document; that to the best of the attorney's or party's knowledge, information, and belief there is good ground to support it; and that   it is not interposed for delay.  * * *  For a willful violation of this rule, an attorney or *pro se* party, upon motion of a party or upon the court's own motion, may be subjected to appropriate action, including an award to the opposing party of expenses and reasonable attorney fees incurred in bringing any motion under this rule.

---

[2]   W. Brownlee's term as councilman commenced after the legislation was passed by council.

Civ.R. 11.

**{¶33}** A trial court considers whether the evidence demonstrates that the attorney that has signed the document "'(1) has read the pleading, (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief, and (3) did not file it for purposes of delay.'" *ABN Amro Mtge. Group, Inc.,* 8th Dist. Cuyahoga No. 98777, 2013-Ohio-1557, at ¶ 17, quoting *Ceol*, 81 Ohio App.3d at 290, 610 N.E.2d 1076.

**{¶34}** Each of these requirements must be met. *Id*. at ¶ 17. Where one of the requirements is not satisfied, a court considers whether the violation was negligent or willful. A trial court has broad discretion to determine willfulness as well as the amount of sanctions to administer. *Id*.; *Rindfleisch v. AFT*, *Inc*., 8th Dist. Cuyahoga Nos. 84551, 84897, and 84917, 2005-Ohio-191, ¶ 16.

**{¶35}** In this case, the trial court issued a summary decision holding that sanctions were imposed under both the statute and the rule, a finding that indicates the trial court determined that each of the Civ.R. 11 requirements had not been satisfied, or that at least one element was present and the conduct was willful.

**{¶36}** As we noted during our analysis of the first assigned error challenging the imposition of sanctions under the objective standard of R.C. 2323.51, English represented Lansky in a number of similar actions over the past 20 years and is familiar with the level of proof required for defamation actions involving public figures. English has not pointed to facts demonstrating that the trial court abused its discretion in determining that English's conduct was willful.

**{¶37}** We affirm the trial court's decision to impose sanctions under Civ.R. 11 and overrule appellant's assigned error on this issue.

## C.    Cross-Appeal; Award of Fees

**{¶38}**   The Brownlees' single cross-assigned error asserts that the trial court erred in awarding only $2,000 in attorney fees to their lead counsel Michael Thompson ("Thompson") with The 1851 Center for Constitutional Law, a nonprofit legal organization based in Columbus, Ohio, and $5,000 in attorney fees to Porter, Wright, Morris & Arthur L.L.P. ("Porter Wright") who served as local counsel to Thompson, according to their retainer agreement with the Brownlees.

**{¶39}** The trial court awarded court costs "as assessed by the clerk of courts as well as defendants' $75 counterclaim filing fee." Journal entry No. 97009376 (Dec. 28, 2016), p. 1. Porter Wright was awarded $5,000, and Thompson was awarded $2,000 in attorney fees. Thompson also received $695 for hotel, mileage, and parking expenses for traveling to Cleveland, and Porter Wright was awarded $1,624.94, the full amount of the expenses that were requested by Porter Wright.

**{¶40}** The Brownlees argue that the award is improper where the uncontested lodestar calculation was $103,666.25 and the trial court failed to detail the decision to deviate from that calculation. English refutes the application of the lodestar calculation and argues that counsel's pro bono representation negated any entitlement to attorney fees.

**{¶41}**   The Brownlees rely on *Turner v. Progressive Cas. Ins.*, 8th Dist. Cuyahoga No. 78862, 2002-Ohio-3240, for the position that the lodestar calculation must be employed and deviations explained in assessing sanctions. The lodestar method was formulated to provide computation guidelines for fee awards to prevailing parties pursuant to "federal fee-shifting statutes." *See*, *generally*, *Burlington v. Dague*, 505 U.S. 557, 112 S.Ct. 2638, 120 L.Ed.2d 449 (1992).

**{¶42}** The *Turner* case cited by the Brownlees was the fourth in a series of appeals following our initial remand of the case to the trial court to apply the lodestar formula to properly calculate an award of attorney fees to a prevailing plaintiff under Section 216 of the Fair Labor Standards Act, 29 U.S.C. 207 et seq.[3] The case did not involve the calculation of fees and expenses under R.C. 2323.51 or Civ.R. 11.

**{¶43}** A court arrives at a lodestar calculation by: (1) "multiplying the number of hours reasonably expended by a reasonable hourly rate," and (2) deciding "whether to adjust the amount [upward or downward] based on the reasonableness factors in Prof.Cond.R. 1.5(a)." *Cruz v. English Nanny & Governess School, Inc.*, 8th Dist. Cuyahoga No. 103714, 2017-Ohio-4176, ¶ 97, citing *Bittner v. Tri-County Toyota, Inc.*, 58 Ohio St.3d 143, 569 N.E.2d 464 (1991), syllabus (applying the predecessor to Prof.Cond.R. 1.5(a)); *Am. Chem. Soc.*, 10th Dist. Franklin No. 08AP-1026, 2010-Ohio-2725, ¶ 88.

**{¶44}** *Cruz* did not involve sanction calculations but discussed the lodestar calculation for attorney fees resulting from the jury's award of punitive damages. "If punitive damages are proper, reasonable attorney fees may be awarded as an element of compensatory damages." *Id.* at ¶ 96, citing *Galmish v. Cicchini*, 90 Ohio St.3d 22, 35, 2000-Ohio-7, 734 N.E.2d 782.

**{¶45}** Contrary to cross-appellants' lodestar argument, when entertaining the issue of sanctions under Civ.R. 11 and R.C. 2323.51, a trial court is not required, even where frivolous conduct exists, to award attorney fees. *Marshall v. Cooper & Elliott,* 2017-Ohio-4301, 82 N.E.3d 1205, ¶ 26 (8th Dist.), *Internatl. Union of Operating Engineers, Local 18,* 8th Dist. Cuyahoga No. 104774, 2017-Ohio-1055, at ¶ 10*, Scott v. Nameth*, 10th Dist. Franklin

---

[3] *Turner v. Progressive Corp.*, 8th Dist. Cuyahoga No. 76524, 1999 Ohio App. LEXIS 5083 (Oct. 28, 1999), *Turner v. Progressive Corp.,* 140 Ohio App.3d 112, 746 N.E.2d 702 (8th Dist.2000), and *Turner v. Progressive Cas. Ins. Co.*, 8th Dist. Cuyahoga No. 78862, 2001 Ohio App. LEXIS 1781 (Apr. 19, 2001).

No. 16AP-64, 2016-Ohio-5532,¶ 32; *see also ABN Amro Mtge. Group, Inc.,* 8th Dist. Cuyahoga No. 98777, 2013-Ohio-1557, at ¶ 32.

**{¶46}** The trial court in this case specifically recognized the scope of its discretion, stating for the record that "the court isn't bound to award that which is requested * * * [and may] award that which the court thinks is reasonable under these circumstances." (Tr. 44.) Counsel for both parties agreed. (Tr. 44-45.)

**{¶47}** This court "will not disturb a trial court's decision to grant or deny" "attorney fees" under Civ.R. 11 and R.C. 2323.51(B)(1) "absent an abuse of discretion." *Marshall* at ¶ 26, citing *DiFranco*, 144 Ohio St.3d 571, 2015-Ohio-4915, 45 N.E.3d 987, at ¶ 13; *State ex rel. Striker*, 130 Ohio St.3d 214, 2011-Ohio-5350, 957 N.E.2d 19, at ¶ 11; *Internatl. Union of Operating Engineers, Local 18* at ¶ 11.

**{¶48}** We will not substitute our judgment for that of the trial court and will only find an abuse of discretion where a decision is "unreasonable, arbitrary or unconscionable." *Marshall*, 2017-Ohio-4301, 82 N.E.3d 1205, at ¶ 27, citing *DiFranco* at ¶ 13, and *Blakemore*, 5 Ohio St.3d at 219, 450 N.E.2d 1140. "'A decision is unreasonable if there is no sound reasoning process that would support that decision.'" *Id.*, quoting *Ockunzzi v. Smith*, 8th Dist. Cuyahoga No. 102347, 2015-Ohio-2708, ¶ 9, quoting *AAAA Ents. Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

**{¶49}** The trial court did not abuse its discretion in awarding $5,000 to Porter Wright and the entirety of the claimed expenses, and $2,000 to Thompson with reimbursement for travel to Cleveland, based on the relatively simple legal issues and facts of this case. *Id.* at ¶ 29.

**{¶50}** The cross-appellants' cross-assigned error is without merit.

### III. Conclusion

**{¶51}** The trial court's judgment is affirmed.

It is ordered that appellant/cross-appellee and appellees/cross-appellant share equally the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.


_____
ANITA LASTER MAYS, JUDGE

SEAN C. GALLAGHER, J., CONCURS;
MARY J. BOYLE, P.J., CONCURS IN JUDGMENT ONLY